Linda Lye (CA SBN 215584)
llye@aclunc.org
Matthew T. Cagle (CA SBN 286101)
mcagle@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437

Patrick Toomey (admission pro hac vice pending)
ptoomey@aclu.org
Anna Diakun (admission pro hac vice pending)
adiakun@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2654

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO-OAKLAND DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA; AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | Case No._____ <br><br> COMPLAINT FOR INJUNCTIVE RELIEF |

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, for injunctive and other appropriate relief. Plaintiffs American Civil Liberties Union of

Northern California, American Civil Liberties Union, and American Civil Liberties Union

Foundation (together, the "ACLU") seek the immediate processing and release of agency records

from Defendant Department of Justice ("DOJ").

2.      On February 6, 2017, Plaintiffs submitted a Freedom of Information Act request

(the "Request") to DOJ seeking records related to the government's official policy on the use of

evidence obtained through secret surveillance and its duty to notify individuals whose private

communications the government has seized and searched. Those records include a DOJ policy

memorandum, distributed to thousands of federal prosecutors and titled "Determining Whether

Evidence Is 'Derived From' Surveillance Under Title III or FISA," which sets forth the

government's definitive position on questions concerning its duty to provide notice of this

surveillance.

3.      After conducting a search for responsive records, DOJ's National Security

Division ("NSD") located and processed two documents, including the policy memorandum

described above. It withheld both records in full.

4.      DOJ's failure to release responsive records is of particular public concern because

the Request pertains to the expanding use of secret electronic searches—including surveillance

of Americans' phone calls and emails under the Foreign Intelligence Surveillance Act ("FISA")

and the Wiretap Act ("Title III"). In total, the government conducts hundreds of thousands of

secret wiretaps and other searches under FISA and Title III each year. Many of these searches

are conducted without warrants or individualized court approval, but are instead conducted under

1

Section 702 of FISA, a highly controversial surveillance law that is currently the subject of intense legislative and public debate.

5.     The government's searches under FISA and Title III are generally invisible to the individuals whose privacy they impact. Unlike traditional searches of a person's home, electronic searches rarely leave any sign, and thus individuals whose privacy has been invaded are entirely dependent on the government's provision of notice. For this reason, the government's policies concerning when it must disclose surveillance implicate the privacy interests of numerous Americans, who are often unable to challenge the lawfulness of government searches without proper notice.

6.     As described below, DOJ has a track record of failing to inform individuals about the surveillance of their communications even when notice is expressly required by law. Accordingly, the public interest in the release of the DOJ policy documents at issue is substantial.

7.     Plaintiffs now ask the Court for an injunction requiring DOJ to promptly release the withheld records.

**PARTIES**

8.     Plaintiff American Civil Liberties Union of Northern California ("ACLU-NC") is an affiliate of the American Civil Liberties Union, which seeks to protect civil liberties from government incursions, safeguard basic constitutional rights, and advocate for open government. The ACLU-NC is established under the laws of the state of California and is headquartered in San Francisco, California. The ACLU-NC has over 160,000 members. In support of its mission, the ACLU-NC disseminates to the public information relating to its mission, through its website, newsletters, and other publications.

9.     Plaintiff American Civil Liberties Union is a nationwide non-profit and non-partisan 501(c)(4) organization with more than 1.6 million members dedicated to the constitutional principles of liberty and equality. The American Civil Liberties Union is committed to ensuring that the United States government complies with the Constitution and laws of this country, including its international legal obligations, in matters that affect civil liberties and human rights. The American Civil Liberties Union is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the American Civil Liberties Union's work and one of its primary activities. The American Civil Liberties Union is incorporated in New York State and has its principal place of business in New York City.

10.     Plaintiff American Civil Liberties Union Foundation is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. It is incorporated in New York State and has its principal place of business in New York City.

11.     Defendant DOJ is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). The agency has its headquarters in Washington, D.C., and offices all over the country, including in San Francisco, California.

## JURISDICTION

12.     This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).  This

3

Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346, and 5 U.S.C. §§ 701–706.

## VENUE AND INTRADISTRICT ASSIGNMENT

13.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) and § 1402.  Plaintiff ACLU-NC has its principal place of business in this district.

14.    Pursuant to Local Rule 3-2(c) and (d), assignment to the San Francisco or Oakland Division is proper because a substantial portion of the events giving rise to this action occurred in this district and division and because Plaintiff ACLU-NC is headquartered in San Francisco.

## FACTUAL BACKGROUND

### Notice of Secret Wiretapping and Surveillance

15.    Each year, the government conducts hundreds of thousands of wiretaps and other searches under FISA and Title III. Section 702 of FISA, in particular, gives the government broad authority to monitor Americans' international communications without a warrant.

16.    The government is required by statute to notify individuals in certain circumstances when it intercepts or obtains their private communications under these authorities. *See* 50 U.S.C. §§ 1806(c), 1881e; 18 U.S.C. § 2518(8)(d). Notice of secret searches is also required by the Fourth and Fifth Amendments to the United States Constitution.

17.    Notice of surveillance is especially critical in criminal prosecutions, where the government seeks to deprive individuals of their liberty. Without notice, defendants are often unable to challenge the lawfulness of the government's secret searches—precisely because they are unaware that the searches occurred at all. In order to ensure judicial review of such highly intrusive techniques, Congress has mandated notice of FISA surveillance and Title III wiretaps in criminal prosecutions. For instance, the government must notify criminal defendants whenever it

4

intends to use or disclose in a prosecution any information obtained or "derived from" its

surveillance of the defendant's communications pursuant to FISA. 50 U.S.C. § 1806(c).

18.    Despite these obligations, the government has not reliably provided notice of surveillance to individuals it is criminally prosecuting. On October 16, 2013, the *New York Times* reported that the DOJ for five years had a policy that deprived defendants of notice that they had been surveilled under Section 702 of FISA. *See* Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. Times, Oct. 16, 2013, http://nyti.ms/1esJy1o. These reports followed the government's repeated assurances to the Supreme Court in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), that it would notify criminal defendants in prosecutions where it intended to use or disclose evidence derived from Section 702 surveillance of the defendant. *See* Br. for Petitioners, *Clapper,* (No. 11-1025), 2012 WL 3090949, at *8; Reply for Petitioners, *Clapper*, (No. 11-1025), 2012 WL 5078759, at *15; Tr. of Oral Argument at 2–4, *Clapper*, (No. 11-1025), *available at* http://1.usa.gov/PgNwku. Because of DOJ's secret policy, individuals who were entitled to notice of surveillance remained in the dark for years.

19.    According to the *New York Times*, when the Solicitor General learned of DOJ's notice policy after the Supreme Court's decision, he concluded that the policy "could not be justified legally." Savage, *supra*. Lawyers with other agencies—including the National Security Agency, the Federal Bureau of Investigation, and the Office of the Director of National Intelligence—concurred in this conclusion. *See id.*

20.    Following these revelations, DOJ changed its policy concerning when criminal defendants are entitled to notice. Yet DOJ's new policy remains secret—and thus, even today, it is unknown whether the government is providing notice as the law requires.

21.    There are reasons to believe that DOJ is still failing to give individuals notice of secret surveillance as the law requires. The government collects hundreds of millions of

5

communications under Section 702 of FISA each year, amassing vast quantities of Americans' incidentally collected emails and phone calls. FBI agents around the country routinely search these Section 702 databases for information about Americans in criminal investigations, as well as in virtually every national security-related investigation. However, only a small number of criminal defendants—as few as ten—have ever received notice of Section 702 surveillance, even after DOJ changed its policy.

22.     As DOJ's past conduct shows, it is impossible to determine whether the government is complying with the law governing notice when its controlling interpretations of the law remain secret.

23.     This problem is especially acute in the context of electronic surveillance and searches. Individuals who are improperly deprived of notice on the basis of unjustifiably narrow policies typically have no way of discovering that fact—because they never learn of the surveillance at all. As a result, individuals have no ability to obtain court review of the government's notice policies, nor do they have an opportunity to challenge the underlying searches and seizures of their private communications or data.

24.     The solution to this dilemma is disclosure of the government's controlling policies concerning when it must provide notice of secret searches. As explained above, the records sought by Plaintiffs are critical to understanding when DOJ notifies Americans that their phone calls, emails, and other internet communications have been seized and searched under FISA and Title III.

25.     Among other things, this information is vitally needed to inform the ongoing public and congressional debate about the reauthorization of Section 702 of FISA, which is scheduled to sunset in December 2017. This information bears on whether the government's controversial surveillance powers should be reformed, whether individuals have an opportunity

to seek judicial review of this surveillance in the public courts, and whether Congress should act

to strengthen existing notice requirements.

**The FOIA Request**

26.     On February 6, 2017, Plaintiffs submitted a FOIA request to several components

of DOJ. A copy of Plaintiffs' FOIA request (without exhibits) is appended hereto as Exhibit 1.

27.     Plaintiffs' FOIA request seeks:

(a)     The memorandum titled "Determining Whether Evidence Is 'Derived

From' Surveillance Under Title III or FISA," as well as:

i.      Any cover letter or other document attached to this memorandum;

ii.     Any version of this memorandum created or distributed on or after

November 23, 2016, whether considered "final" or otherwise; and

iii.    Any record modifying, supplementing, superseding, or rescinding

this memorandum or its contents.

28.     Plaintiffs sought expedited processing of the Request on the grounds that there is a

"compelling need" for these records because the information requested is urgently needed by an

organization primarily engaged in disseminating information in order to inform the public about

actual or alleged federal government activity. 5 U.S.C. § 522(a)(6)(E).

29.     Plaintiffs sought a waiver of search, review, and reproduction fees on the grounds

that disclosure of the requested records is "in the public interest because it is likely to contribute

significantly to public understanding of the operations or activities of the government and is not

primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

30.     Plaintiffs also sought a waiver of search and review fees on the grounds that the

ACLU qualifies as a "representative of the news media" and that the records are not sought for

commercial use. *Id.* § 552(a)(4)(A)(ii).

**Defendant's Response to the Request**

31.     By email dated February 10, 2017 (appended hereto as Exhibit 2), DOJ, via its component NSD, acknowledged receipt of the Request and assigned it reference number 17-064. DOJ informed Plaintiffs that it had conducted a search and had located two responsive records.

32.     The first record is a 31-page memorandum titled "Determining Whether Evidence is 'Derived From' Surveillance Under Title III or FISA." DOJ withheld this document in full, citing Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5).

33.     The second record is a two-page memorandum dated November 23, 2016, sent from Patty Merkamp Stemler, Chief of the Appellate Section in the Criminal Division of DOJ and an NSD Attorney, to all federal prosecutors. DOJ withheld this document in full, citing Exemptions 5, 6, and 7(C) of FOIA, 5 U.S.C. §§ 552(b)(5), (b)(6), and (b)(7)(C).

34.     On information and belief, the second record is a cover memorandum distributed to all federal prosecutors together with the first record. There are thousands of federal prosecutors around the country.

35.     On February 22, 2017, Plaintiffs timely filed an administrative appeal from DOJ's decision. Plaintiffs' February 22, 2017 administrative appeal is appended hereto as Exhibit 3. Plaintiffs challenged the adequacy of DOJ's search, its improper withholding of the records under Exemptions 5, 6, and 7(C), and its failure to segregate all non-exempt information in the records.

36.     On February 22, 2017, DOJ's Office of Information Policy ("OIP") acknowledged receipt of the appeal, assigning it tracking number DOJ-AP-2017-002487.

37.     By email dated March 8, 2017 (appended hereto as Exhibit 4), OIP informed Plaintiffs that their request for expedited processing had been granted.

38.     On March 17, 2017, Sean R. O'Neill, Chief of the Administrative Appeals Staff at OIP, responded to the appeal, affirming on partly modified grounds. Mr. O'Neill stated that DOJ "properly withheld this information in full because it is protected from disclosure under the FOIA pursuant to" Exemptions 5, 6, and 7(C). Mr. O'Neill further stated that the documents were withholdable under Exemption 5 because they were protected by the attorney work-product privilege, but not the deliberative process privilege, as DOJ had previously asserted. DOJ's March 17, 2017 letter is appended hereto as Exhibit 5.

39.     DOJ continues to wrongfully withhold the requested records from Plaintiffs.

40.     Having exhausted all administrative remedies, Plaintiffs now seek injunctive relief.

## FIRST CAUSE OF ACTION

### Violation of Freedom of Information Act

41.     Plaintiffs incorporate the above paragraphs as if fully set forth herein.

42.     Defendant's failure to promptly make available the records sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), (a)(6)(A), and Defendant's corresponding regulations.

43.     Defendant's failure to grant Plaintiffs' request for a waiver of search, review, and duplication fees violates FOIA, 5 U.S.C. § 552(a)(4), (a)(6), and Defendant's corresponding regulations.

44.     Defendant's failure to grant Plaintiffs' request for a limitation of fees violates FOIA, 5 U.S.C. § 552(a)(4), (a)(6), and Defendant's corresponding regulations.

### REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.      Order Defendant DOJ to immediately process and release all responsive records;

B.     Enjoin Defendant DOJ from charging Plaintiffs search, review, or duplication fees for the processing of the Request;

C.     Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

D.     Grant such other relief as the Court deems just and proper.


Dated: June 21, 2017                        By:  ___/s/ Linda Lye_____

                                                  Linda Lye


                                            Linda Lye
                                            Matthew Cagle
                                            AMERICAN CIVIL LIBERTIES UNION
                                            FOUNDATION OF NORTHERN CALIFORNIA
                                            39 Drumm Street
                                            San Francisco, CA 94111
                                            Tel: (415) 621-2493
                                            Fax: (415) 255-8437

                                            Patrick Toomey (admission pro hac vice pending)
                                            Anna Diakun (admission pro hac vice pending)
                                            AMERICAN CIVIL LIBERTIES UNION
                                            FOUNDATION
                                            125 Broad Street, 18th Floor
                                            New York, NY 10004
                                            Tel: (212) 549-2500
                                            Fax: (212) 549-2654

                                            *Attorneys for Plaintiffs*

COMPLAINT FOR INJUNCTIVE RELIEF
*American Civil Liberties Union of Northern California, American Civil Liberties Union, and American Civil Liberties Union Foundation v. DOJ,* Case No.

# Exhibit 1

February 6, 2017

FOIA/PA Mail Referral Unit
Justice Management Division
Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001
E-mail: MRUFOIA.Requests@usdoj.gov

Arnetta Mallory
FOIA Initiatives Coordinator
National Security Division
Department of Justice
Room 6150
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
E-mail: nsdfoia@usdoj.gov

Chief, FOIA/PA Unit
Criminal Division
Department of Justice
Suite 1127, Keeney Building
Washington, DC 20530-0001
Email: crm.foia@usdoj.gov

FOIA/Privacy Staff
Executive Office for United States Attorneys
Department of Justice
Room 7300, 6000 E Street, NW
Washington, DC 20530-0001
Email: USAEO.FOIA.Requests@usdoj.gov

Laurie Day, Chief, Initial Request Staff
Office of Information Policy, Office of the Attorney General, and
    Office of the Deputy Attorney General
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

ROBERT B. REMAR
TREASURER

**Re:     Request Under Freedom of Information Act / Expedited Processing Requested**

To Whom It May Concern:

This letter constitutes a request ("Request") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and its implementing regulations.[1] The Request is submitted by the American Civil Liberties Union, the American Civil Liberties Union Foundation, and the American Civil Liberties Union of Northern California (collectively "ACLU").[2]

The ACLU seeks disclosure of Department of Justice documents concerning a core Fourth Amendment question bearing on the privacy rights of Americans: in what circumstances does the Department of Justice consider information or evidence to be "derived from" surreptitious surveillance, including surveillance conducted under the Foreign Intelligence Surveillance Act ("FISA") and the Wiretap Act ("Title III"). The Department's answer to this question affects when it notifies Americans that their phone calls, emails, and other internet communications have been seized and searched by the government. Without such notice, Americans typically have no way of discovering that they have been surveilled, and thus no way of seeking court review of these searches and seizures of their private communications.

Public release of this information is urgently needed. The government conducts thousands of wiretaps and other searches under FISA and Title III each year. The government's notice policies therefore implicate the privacy interests of numerous Americans, who are generally unable to challenge the lawfulness of government searches without proper notice. Moreover, official disclosures show that the Department of Justice for years failed to notify criminal defendants when evidence was "derived from" surveillance under Section 702 of FISA. As part of the ongoing debate about whether to reauthorize Section 702 when it expires this year, Congress is presently considering whether reforms to Section 702 are necessary. Information about how the government is interpreting key

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

---

[1] *See* 28 C.F.R. § 16.1.

[2] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

2

elements of FISA is critical to this public debate and these imminent legislative judgments.

\* \* \*

## I.    Records Requested

1.  The memorandum titled "Determining Whether Evidence Is 'Derived From' Surveillance Under Title III or FISA,"[3] as well as:

    a.  Any cover letter or other document attached to this memorandum;

    b.  Any version of this memorandum created or distributed on or after November 23, 2016, whether considered "final" or otherwise; and

    c.  Any record modifying, supplementing, superseding, or rescinding this memorandum or its contents.

\* \* \*

We request that responsive electronic records be provided electronically in their native file format. *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, we request that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files.

## II.    Request for Expedited Processing

We request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and the statute's implementing regulations. There is a "compelling need" for these records, as defined in the statute and regulations, because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity. 5 U.S.C. § 552(a)(6)(E)(v); *see also* 28 C.F.R. § 16.5(e)(1)(ii); 28 C.F.R. § 16.5(e)(1)(iv).

### A.    The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute and relevant regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II); 28 C.F.R. § 16.5(e)(1)(ii). *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding that a non-profit, public-interest group that "gathers information of potential interest to a segment of the

---

[3] The ACLU understands that a final version of this document was distributed within the Department of Justice on November 23, 2016.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" is "primarily engaged in disseminating information" (internal citation omitted)); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding Leadership Conference—whose mission is to "disseminate[] information regarding civil rights and voting rights to educate the public [and] promote effective civil rights laws"—to be "primarily engaged in the dissemination of information").

Dissemination of information about actual or alleged government activity is a critical and substantial component of the ACLU's mission and work. The ACLU disseminates this information to educate the public and promote the protection of civil liberties. The ACLU's regular means of disseminating and editorializing information obtained through FOIA requests include: a paper newsletter distributed to approximately 450,000 people; a bi-weekly electronic newsletter distributed to approximately 300,000 subscribers; published reports, books, pamphlets, and fact sheets; a widely read blog; heavily visited websites, including an accountability microsite, http://www.aclu.org/accountability; and a video series. The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news. ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[4]

The ACLU website specifically includes features on information about actual or alleged government activity obtained through FOIA.[5] For example, the ACLU maintains an online archive of surveillance-related documents released via FOIA as well as other sources.[6] Similarly, the ACLU maintains an online "Torture Database," which is a compilation of over 100,000 FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[7] The ACLU's webpage concerning the Office of Legal Counsel torture memos obtained through FOIA contains commentary and analysis of the memos; an original, comprehensive chart summarizing the memos; links to web features created by ProPublica (an independent, non-profit, investigative-

---

[4] *See, e.g.*, Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016 (quoting ACLU attorney Nate Wessler); Peter Finn & Julie Tate, *CIA Mistaken on 'High-Value' Detainee, Document Shows*, Wash. Post, June 16, 2009 (quoting ACLU attorney Ben Wizner).

[5] *See, e.g.*, http://www.aclu.org/safefree/nsaspying/30022res20060207.html; http://www.aclu.org/mappingthefbi; http://www.aclu.org/patriotfoia; http://www.aclu.org/safefree/nationalsecurityletters/32140res20071011.html.

[6] https://www.aclu.org/nsa-documents-search.

[7] http://www.torturedatabase.org.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

journalism organization) based on the ACLU's information gathering, research, and analysis; and ACLU videos about the memos.[8] In addition to its websites, the ACLU has produced an in-depth television series on civil liberties, which has included analysis and explanation of information the ACLU has obtained through FOIA.

Similarly, the ACLU of Northern California actively disseminates and frequently garners extensive media coverage of the information it obtains about actual or alleged government activity through FOIA and California's statutory counterpart, the California Public Records Act.  It does so through a heavily visited website (averaging between 10,000 and 20,000 visitors per week) and a paper newsletter distributed to its members, who now number over 80,000.  In the past, information obtained by the ACLU-NC through FOIA requests concerning government surveillance practices have garnered extensive national coverage.[9]  ACLU-NC staff persons are frequent spokespersons in television and print media and make frequent public presentations at meetings and events.

The ACLU plans to analyze and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use, and the Requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.[10]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[8] http://www.aclu.org/safefree/general/olc_memos.html.

[9] *See, e.g.,* https://www.aclunc.org/blog/justice-department-emails-show-feds-were-less-explicit-judges-cell-phone-tracking-tool; Jennifer Valentino-Devries, *Judges Questioned Use of Cellphone Tracking Devices,* Wall St. J. (Mar. 27, 2013); Ellen Nakashima, *Little-Known Surveillance Tool Raises Concerns by Judges, Privacy Activists,* Wash. Post (Mar. 27, 2013); Rory Carroll, *ACLU Challenges 'Stingray Surveillance' that Allows Police to Track Cellphones,* Guardian (Mar. 28, 2013); Shaun Waterman, *Can You Hear Me Now  Feds Admit FBI Warrantless Cellphone Tracking 'Very Common'*, Wash. Times (Mar. 29, 2013); Kim Zetter, *Government Fights for Use of Spy Tool That Spoofs Cell Towers,* Wired (Mar. 29, 2013); J.D. Tuccille, *Feds Routinely Track Cell Phones Without Telling Judges,* Reason.com (Mar. 27, 2013); Josh Peterson, *DOJ Emails Show Feds Kept Judges in the Dark About Cellphone Tracking Device,* Daily Caller (Mar. 28, 2013); *ACLU: Feds Secretly Using Highly Invasive Spying Tool,* Wash. Post (Mar. 28, 2013); Ryan Gallagher, *Feds Accused of Hiding Information From Judges About Covert Cellphone Tracking Tool,* Slate.com, (Mar. 28, 2013); *Feds Admit FBI Warrantless Cellphone Tracking 'Very Common,'* Press TV (Mar. 30, 2013); Vanessa Blum, *Emails Detail Northern District's Use of Controversial Surveillance,* Recorder (Apr. 1, 2013).

[10] In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico. These offices further disseminate ACLU material to local residents, schools, and organizations through a variety of means, including their own websites, publications, and newsletters.

B.     **The records sought are urgently needed to inform the public about actual or alleged government activity.**

The records sought are urgently needed to inform the public. They relate to matters in which there is "[a]n urgency to inform the public about an actual or alleged Federal Government activity," 28 C.F.R. § 16.5(e)(1)(ii), as well as matters "of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," *id.* § 16.5(e)(1)(iv).

The records sought pertain to the government's interpretation and implementation of surveillance laws that have drawn public scrutiny and significantly impact Americans' privacy and free speech rights. In particular, they pertain to the Department of Justice's use of information derived from surveillance under FISA and Title III in criminal prosecutions and other legal proceedings. This information is vitally needed to inform the ongoing public and congressional debate about whether the government's electronic surveillance powers should be narrowed, whether Section 702 of FISA should be reauthorized in its current form when it expires this year, and whether Congress should act to strengthen existing notice requirements. Indeed, despite the government's failure to properly provide notice of surveillance in the past, little remains known about how the government interprets its duty to provide notice of surveillance to Americans.

The government's electronic surveillance powers have been a significant matter of public concern and media interest for many years, particularly after the revelation of the NSA's warrantless wiretapping program. The legislation that emerged out of that controversy—Section 702 of FISA—has been the subject of widespread interest and debate since the moment it was introduced in 2008. *See, e.g.*, Sean Lengell, *House Approves Update of Bipartisan Spy Laws*, Wash. Times, June 21, 2008; Editorial, *Mr. Bush v. the Bill of Rights*, N.Y. Times, June 18, 2008; Editorial, *Compromising the Constitution*, N.Y. Times, July 8, 2008 (stating that the FAA would "make it easier to spy on Americans at home, reduce the courts' powers and grant immunity to the companies that turned over Americans' private communications without warrant"); Editorial, *Election-Year Spying Deal is Flawed, Overly Broad*, USA Today, June 25, 2008.

This public debate has only grown with recent disclosures concerning the scope and intrusiveness of government surveillance. Scores of articles published during the past three years have addressed the government's surveillance activities—under FISA, Section 702, and Title III. *See, e.g.*, Barton Gellman et al., *In NSA-Intercepted Data, Those Not Targeted Far Outnumber the Foreigners Who Are*, Wash. Post, (July 5, 2014), http://wapo.st/1xyyGZF; Charlie Savage, *N.S.A. Said to Search Content of Messages to and from U.S.*, N.Y. Times (Aug. 8, 2013), http://nyti.ms/1ppBBoT; Charlie Savage & Nicole Perloff, *Yahoo Said to Have Aided U.S. Email Surveillance by Adapting Spam*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

6

*Filter*, N.Y. Times (Oct. 5, 2016), http://nyti.ms/2jeRXx7; Brad Heath & Brett Kelman, *Police Used Apparently Illegal Wiretaps to Make Hundreds of Arrests*, USA Today (Nov. 19, 2015), http://usat.ly/1lEJmoF.

A number of those articles have highlighted pressing concerns about whether the government is properly interpreting its obligation to provide notice of foreign-intelligence surveillance to criminal defendants and others. *See, e.g.*, Adam Liptak, *A Secret Surveillance Program Proves Challengeable in Theory Only*, N.Y. Times, July 15, 2013, http://nyti.ms/12ANzNM; Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. Times, Oct. 16, 2013, http://nyti.ms/1bAe7QZ. That concern became particularly acute in the aftermath of the Supreme Court's decision in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), when it became apparent that the Department of Justice had not been providing notice to criminal defendants as expressly required by statute. *See, e.g.*, Devlin Barrett, *U.S. Spy Program Lifts Veil in Court*, Wall St. J., July 31, 2013, http://on.wsj.com/19nu8KC. Revelations of this failure have drawn intense public attention because, after *Clapper*, criminal prosecutions are one of the few avenues for obtaining judicial review of surveillance programs that affect thousands or even millions of Americans. *See* Scott Lemieux, *Secret Wiretapping Cannot Be Challenged Because It's Secret*, The American Prospect, Feb. 26, 2013; Adam Liptak, *Justices Turn Back Challenge to Broader U.S. Eavesdropping*, N.Y. Times, Feb. 26, 2013. Indeed, both the Supreme Court and the Executive Branch indicated in *Clapper* that the proper avenue for judicial review of wiretapping activities is a criminal or administrative proceeding where the fruit of that surveillance is at issue. *See Clapper*, 133 S. Ct. 1138. Judicial review is impossible, however, unless criminal defendants and others receive notice of these searches. The request seeks information concerning Department of Justice policies and legal interpretations that bear directly on this matter of public concern.

As these events and sustained media interest clearly show, there is "[a]n urgency to inform the public about an actual or alleged Federal Government activity," 28 C.F.R. § 16.5(e)(1)(ii), and the government's use of information obtained or derived from foreign-intelligence surveillance constitutes a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," 28 C.F.R. § 16.5(d)(1)(iv). The Request will inform an urgent and ongoing debate about the government's surveillance and wiretapping activities.

Accordingly, expedited processing should be granted.

### III.   Application for Waiver or Limitation of Fees

#### A.   Release of the records is in the public interest.

We request a waiver of search, review, and reproduction fees on the grounds that disclosure of the requested records is in the public interest because

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

it is likely to contribute significantly to the public understanding of the United States government's operations or activities and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii); 28 C.F.R. § 16.11(k).

As discussed above, numerous news accounts reflect the considerable public interest in the requested records. Given the ongoing and widespread media attention to this issue, the records sought by the Request will significantly contribute to the public understanding of the operations and activities the agencies that are responsible for implementing Section 702. *See* 28 C.F.R. § 16.11(k)(1)(i). In addition, disclosure is not in the ACLU's commercial interest. As described above, any information disclosed as a part of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'") (citation omitted); OPEN Government Act of 2007, Pub. L. No. 110-175, § 2, 121 Stat. 2524 (finding that "disclosure, not secrecy, is the dominant objective of the Act," quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1992)).

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

## B.   The ACLU qualifies as a representative of the news media.

A waiver of search and review fees is warranted because the ACLU qualifies as a "representative of the news media" and the requested records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii); *see also* 28 C.F.R. § 16.11(k). Accordingly, fees associated with the processing of this request should be "limited to reasonable standard charges for document duplication."

The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also Nat'l Sec. Archive v. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *cf. ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is a "representative of the news media" for the same reasons that it is "primarily engaged in the dissemination of information." *See Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10–15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for FOIA purposes). The ACLU recently was held to be a "representative of the news media." *Serv. Women's Action Network v. Dep't of Def.*, No. 3:11CV1534 (MRK), 2012 WL 3683399, at *3 (D. Conn. May 14, 2012); *see also ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding ACLU of Washington to be a "representative of the news

media"), *reconsidered in part on other grounds*, 2011 WL 1900140 (W.D. Wash. May 19, 2011).[11]

\* \* \*

Pursuant to applicable statute and regulations, we expect a determination regarding expedited processing within ten (10) calendar days. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); 28 C.F.R. § 16.5(e)(4).

If the request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b). Furthermore, if any documents responsive to this request are classified, please identify those documents, including a date and document number where possible, so we may begin the process of requesting a Mandatory Declassification Review under the terms of Executive Order 13,526.

I certify that the foregoing information provided in support of the request for expedited processing is true and correct to the best of my knowledge and belief.

Executed on the 6th day of February, 2017.

Sincerely,

Patrick Toomey
American Civil Liberties Union
Foundation
125 Broad Street, 18th floor
New York, NY 10004
Tel: 212 549 2607
Fax: 212 549 2654
ptoomey@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[11] In October 2015, the Department of State granted a fee waiver with respect to a request for documents relating to Executive Order 12,333. In October 2013, the Department of State granted a fee waiver with respect to a request for documents relating to the government's targeted-killing program. In April 2013, the DOJ National Security Division granted a fee waiver with respect to a request for documents relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee waiver with respect to a FOIA request for documents related to national security letters issued under the Electronic Communications Privacy Act. In August 2013, the FBI granted a fee waiver request related to the same FOIA request issued to the DOJ.

# Exhibit 2

| | |
|---|---|
| **From:** | NSDFOIA (NSD) |
| **To:** | Patrick Toomey |
| **Subject:** | NSD FOIA Request #17-064 |
| **Date:** | Friday, February 10, 2017 3:04:42 PM |
| **Attachments:** | image001.gif |
| | image002.jpg |
| | image003.png |

Patrick Toomey
National Security Project
American Civil Liberties Union
125 Broad Street
New York, NY  10004

Re: FOIA/PA #17-064

Dear Mr. Toomey:

This is to acknowledge receipt of your email dated February 6, 2017 pertaining to 1. The memorandum titled "Determining Whether Evidence Is 'Derived From' Surveillance Under Title III or FISA,"3 as well as:  a. Any cover letter or other document attached to this memorandum; b. Any version of this memorandum created or distributed on or after November 23, 2016, whether considered "final" or otherwise; and c. Any record modifying, supplementing, superseding, or rescinding this memorandum or its contents.  Our FOIA office received your Freedom of Information Act request on February 6, 2017.

In response to your request, we have conducted a search of Office of the Assistant Attorney General for the National Security Division (NSD).  We have located two records and processed these under the FOIA.  We are withholding the records (as described on the enclosed schedule) in full pursuant to one or more of the following FOIA exemptions set forth in 5 U.S.C. 552(b):

(5) which permits the withholding of inter-agency or intra-agency memorandums or letters which reflect the predecisional, deliberative processes of the Department; and/or which consist of attorney work product prepared in atnticipation of litigation; and,

(6) which permits the withholding of personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; and,

(7) which permits the withholding of records or information compiled for law enforcement puposes, but only to the extent that the production of such law enforcement records or information…

(c) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050,

1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,
Arnetta Mallory
Government Information Specialist

SCHEDULE OF DOCUMENTS WITHHELD IN FULL
(Refer to Body of Letter for Full Description of Each Exemption)

1.      Memo 11-23-2016 Patty Merkamp Stemler, Chief, Appellate Section, Criminal Division and an NSD Attorney to All Federal Prosecutors; 2 pages.
Withheld in full pursuant to 5 U.S.C 552(b)(5).
Withheld in full pursuant to 5 U.S.C. 552 (b)(6) and (7)(C)

2.      Determining Whether Evidence is "Derived From" Surveillance Under Title III or FISA; 31 pages.
Withheld in full pursuant to 5 U.S.C. 552 (b)(5).

---

**From:** Patrick Toomey [mailto:ptoomey@aclu.org]
**Sent:** Monday, February 06, 2017 10:14 AM
**To:** NSDFOIA (NSD) <Ex_NSDFoia@jmd.usdoj.gov>
**Subject:** FOIA Request / Expedited Processing Requested

Hello,

Please see the attached FOIA request, which includes a request for expedited processing.

Thank you for your prompt attention to this request.

Sincerely,
Patrick Toomey

**Patrick Toomey**
Staff Attorney, National Security Project
American Civil Liberties Union
125 Broad St., New York, NY 10004
¦ 212.519.7816 ¦ ptoomey@aclu.org
www.aclu.org ☐ ☐



*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

Exhibit 3



**LEGAL DEPARTMENT**

February 22, 2017

**VIA FOIAONLINE**
Director, Office of Information Policy (OIP)
U.S. Department of Justice
Suite 11050
1425 New York Ave., NW
Washington, DC 20530-0001

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

ROBERT B. REMAR
*TREASURER*

**RE:   FREEDOM OF INFORMATION ACT APPEAL
        FOIA TRACKING NO. 17-064**

To Whom It May Concern:

The American Civil Liberties Union, the American Civil Liberties Union Foundation, and the American Civil Liberties Union of Northern California (collectively, the "ACLU") write to appeal the National Security Division's response to Freedom of Information Act ("FOIA") request number 17-064 (the "Request") (Exhibit 1), in which the ACLU seeks disclosure of Department of Justice documents describing the circumstances in which the Department of Justice considers information or evidence to be "derived from" surreptitious surveillance, including surveillance conducted under the Foreign Intelligence Surveillance Act ("FISA") and the Wiretap Act ("Title III").

Specifically, the Request seeks:

1.   The memorandum titled "Determining Whether Evidence Is 'Derived From' Surveillance Under Title III or FISA,"[1] as well as:

a. Any cover letter or other document attached to this memorandum;

b. Any version of this memorandum created or distributed on or after November 23, 2016, whether considered "final" or otherwise; and

c. Any record modifying, supplementing, superseding, or rescinding this memorandum or its contents.

---

[1] The ACLU understands that a final version of this document was distributed within the Department of Justice (DOJ) on November 23, 2016.

The National Security Division ("NSD") transmitted its final response to the ACLU via email on February 10, 2017 ("Response") (Exhibit 2). NSD's response states that it searched the Office of the Assistant Attorney General for the National Security Division and that it is withholding two memoranda in full pursuant to Exemption 5 (based on the deliberative-process and attorney work-product privileges), Exemption 6, and Exemption 7(C). *See* 5 U.S.C. § 552(b)(5)–(7).

The ACLU appeals from NSD's response, both because its search for records was inadequate and because it has failed to justify its withholding of the two memoranda.

\* \* \*

## I.    Inadequate Search

### A.    Scope of Search

The ACLU challenges the adequacy of NSD's search. NSD's response states that it conducted a search in the Office of the Assistant Attorney General, however, NSD does not appear to have searched other offices within the component. For example, NSD's Office of Intelligence, which evaluates the legal authority for operations under FISA, and its Law and Policy Office, which provides assistance and advice on national security law, are also likely to have materials responsive to the Request and have been searched in response to similar requests in the past. *See, e.g.*, Decl. of Mark Bradley, *ACLU v. DOJ*, No. 13-cv-0747 (S.D.N.Y. Nov. 23, 2015) (ECF No. 49).

More broadly, NSD has provided no information about the manner in which it searched its files for responsive records. For example, the Response does not describe the types of records encompassed by NSD's search; the repositories searched, whether classified or unclassified; the electronic search terms and protocols used, if any; or the individuals within NSD whom were consulted in order to identify responsive records. Without information about the manner in which NSD carried out its search, it is impossible to determine whether NSD's search was reasonable and adequate.

## II.    Improper Withholding

### A.    Exemption 5

With respect to Exemption 5, although NSD states that the documents may be withheld pursuant to the deliberative-process and the attorney work-product privileges, it provides no facts whatsoever to support this conclusion, let alone the detailed description that courts require to sustain an invocation of these privileges. *See, e.g., Automobile Club of N.Y v. Port of N.Y. and N.J.,* 297 F.R.D. 55, 60 (S.D.N.Y. May 8, 2013) (applying *Nat'l Council of La Raza v. DOJ,* 411 F.3d 350

(2d Cir. 2005)); *United States v. Construction Products Research, Inc.,73* F.3d 464, 474 (2d Cir. 1996). Significantly, both documents appear to be final memoranda, and both were likely distributed as legal and policy guidance to "all federal prosecutors" in 93 U.S. Attorneys' Offices across the country.[2] Response at 1. Despite NSD's invocation of privilege, it has not described the decisionmaking process that the documents purportedly concern or how the documents relate to that process. It has not described the specific claim and litigation for which the documents were purportedly prepared. And it has not identified who received the documents, or how those individuals used and relied on them. Because NSD has not provided these basic details and others, it is impossible to conclude that the documents meet the basic elements of these privileges—for instance, that they are "predecisional" and "deliberative," or that they were prepared in reasonable anticipation of specific litigation.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

NSD has also failed to establish that the two withheld records do not contain "working law" or adopted law and policy. Disclosure of working law and policy is required under FOIA notwithstanding any invocation of privilege. *See, e.g.*, *Brennan Ctr. for Justice v. DOJ*, 697 F.3d 184, 195–208 (2d Cir. 2012); 5 U.S.C. § 552(a). Both of the withheld records are likely to contain information reflecting the government's effective law and policy—precisely because the Request sought legal analysis and memoranda, as well as any cover letter or other attachments. OIP has previously concluded, in response to a similar request, that NSD improperly sought to withhold policy memoranda in full where disclosure was in fact required. *See* OIP Response Letter dated Aug. 25, 2016 (Appeal No. DOJ-AP-2016-000457).

## A. Exemption 6 and 7(C)

With respect to Exemptions 6 and 7(C), NSD's response does not identify or describe the portions of the documents that have been withheld on the basis of these exemptions. As a result, it is impossible to conclude that the withheld information properly falls within the asserted exemptions. However, based on the nature of the Request, it is extremely unlikely that records at issue are "personnel and medical files and similar files" that would qualify for Exemption 6 protection at all. 5 U.S.C. § 552(b)(6). Instead, they are legal and policy memoranda providing guidance on DOJ's use of evidence derived from surveillance conducted under FISA and Title III. Similarly, NSD has not established that the records were compiled for "law enforcement purposes" nor does it point to any information therein whose disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7).

## B. Segregability

---

[2] Notably, NSD does not identify either of the withheld documents as "drafts," though that label alone would not establish that the memoranda may be withheld under FOIA.

Finally, NSD has not shown that it attempted to segregate all non-exempt information in the records, including statements of fact and descriptions of existing policy, as FOIA requires. *See* 5 U.S.C. § 552(b). Merely invoking privilege and citing Exemption 5, 6, and 7(C) does not relieve NSD's burden to show that the documents were reviewed for segregable information.

Because NSD has not provided sufficient information about the withheld records and the basis for their withholding, it has not met its burden of establishing that the records are exempt under FOIA.

* * *

For the foregoing reasons, NSD should be required to conduct an adequate search and release the two withheld documents responsive to the Request.

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

Thank you for your prompt attention to this matter.

Sincerely,

*/s/ Patrick Toomey*

Patrick Toomey
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
ptoomey@aclu.org

4

# Exhibit 4

| **From:** | OIP-NoReply@usdoj.gov |
| **To:** | Patrick Toomey |
| **Subject:** | FOIA Expedited Processing Disposition Reached for DOJ-AP-2017-002487 |
| **Date:** | Wednesday, March 08, 2017 7:25:55 AM |

Your request for Expedited Processing for the FOIA request DOJ-AP-2017-002487 has been granted. Additional details for this request are as follows:

- Request Created on: 02/22/2017
- Expedited Disposition Reason: N/A
- Request Long Description: Please see attached Appeal Letter.

# Exhibit 5



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

**March 17, 2017**

Patrick C. Toomey, Esq.
American Civil Liberties Union
  Foundation
18th Floor
125 Broad Street                           Re:       Appeal No. DOJ-AP-2017-002487
New York, NY  10004                                    Request No. 17-064
ptoomey@aclu.org                                       MWH:RNB

**VIA:  FOIAonline**

Dear Mr. Toomey:

You appealed on behalf of your clients, the American Civil Liberties Union, the American Civil Liberties Union Foundation, and the American Civil Liberties Union of Northern California, from the action of the National Security Division (NSD) on your clients' Freedom of Information Act request for access to certain records concerning the memorandum titled "Determining Whether Evidence Is 'Derived From' Surveillance Under Title III or FISA".

After carefully considering your appeal, I am affirming, on partly modified grounds, NSD's action on your request. The FOIA provides for disclosure of many agency records. At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities. NSD properly withheld this information in full because it is protected from disclosure under the FOIA pursuant to:

     5 U.S.C. § 552(b)(5), which concerns certain inter- and intra-agency records protected by the attorney work-product privilege;

     5 U.S.C. § 552(b)(6), which concerns material the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties; and

     5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

Please be advised that for each of these exemptions, it is reasonably foreseeable that disclosure of the information withheld would harm the interests protected by these exemptions.

- 2 -

As to your appeal concerning the adequacy of NSD's search for responsive records subject to the FOIA, I have determined that NSD's response was correct and that it conducted an adequate, reasonable search for such records. NSD searched the offices reasonably likely to maintain records responsive to your request.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your clients' underlying request, and the action of NSD on your clients' request. If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal. Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

If your clients are dissatisfied with my action on your appeal, the FOIA permits them to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your clients' right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

X *Sean O'Neill*

Sean R. O'Neill
Chief, Administrative Appeals Staff