1  Linda Lye (CA SBN 215584)
2  llye@aclunc.org
   Matthew T. Cagle (CA SBN 286101)
3  mcagle@aclunc.org
   AMERICAN CIVIL LIBERTIES UNION
4  FOUNDATION OF NORTHERN CALIFORNIA, INC.
   39 Drumm Street
5  San Francisco, CA 94111
   Tel: (415) 621-2493
6  Fax: (415) 255-8437
7
   Patrick Toomey (admitted *pro hac vice*)
8  ptoomey@aclu.org
   Anna Diakun (admitted *pro hac vice*)
9  adiakun@aclu.org
   AMERICAN CIVIL LIBERTIES UNION
10 FOUNDATION
   125 Broad Street, 18th Floor
11 New York, NY 10004
   Tel: (212) 549-2500
12 Fax: (212) 549-2654
13
14 Attorneys for Plaintiffs

15                    UNITED STATES DISTRICT COURT

16              FOR THE NORTHERN DISTRICT OF CALIFORNIA

17                  SAN FRANCISCO-OAKLAND DIVISION

18
   AMERICAN CIVIL LIBERTIES UNION OF      )  Case No. 4:17-cv-03571 JSW
19 NORTHERN CALIFORNIA; AMERICAN          )
   CIVIL LIBERTIES UNION; AMERICAN CIVIL  )  PLAINTIFFS' NOTICE OF CROSS-
20 LIBERTIES UNION FOUNDATION,            )  MOTION; MEMORANDUM OF
                                          )  POINTS AND AUTHORITIES
21                    Plaintiffs,         )  OPPOSITION TO DEFENDANT'S
                                          )  MOTION FOR SUMMARY
22         v.                             )  JUDGMENT AND IN SUPPORT OF
                                          )  CROSS-MOTION FOR SUMMARY
23 DEPARTMENT OF JUSTICE,                 )  JUDGMENT
                                          )
24                    Defendant.          )
                                          )  Hearing Date: November 17, 2017
25                                           Time: 9:00 a.m.
                                             Judge: Hon. Jeffrey S. White
26                                           Courtroom: 5, 2nd Floor
27
28

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

TO DEFENDANT AND ITS COUNSEL OF RECORD:  PLEASE TAKE NOTICE THAT on

November 17, 2017, at 9:00 a.m., Plaintiffs American Civil Liberties Union of Northern California,

American Civil Liberties Union, and American Civil Liberties Union Foundation will bring for hearing

a cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 in this Freedom of

Information Act ("FOIA") action on the ground that Defendant is unlawfully withholding agency

documents, in particular that the exemptions asserted by the agency as to the documents are

inapplicable.  The hearing will take place before the Honorable Jeffrey S. White, in Courtroom 5, 2nd

Floor, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612.  This motion is based on this notice,

the attached memorandum of points and authorities, the accompanying Declaration of Anna Diakun and

attached exhibits, all pleadings and papers filed in this action, and such oral argument and evidence as

may be presented at the hearing on the motion.


Dated:  September 29, 2017                    Respectfully submitted,

                                             By: _____ /s/ *Linda Lye* _____
                                                          Linda Lye

                                             Linda Lye
                                             Matthew Cagle
                                             AMERICAN CIVIL LIBERTIES UNION
                                             FOUNDATION OF NORTHERN CALIFORNIA
                                             39 Drumm Street
                                             San Francisco, CA 94111
                                             Tel: (415) 621-2493
                                             Fax: (415) 255-8437

                                             Patrick Toomey (admitted *pro hac vice*)
                                             Anna Diakun (admitted *pro hac vice*)
                                             AMERICAN CIVIL LIBERTIES UNION
                                             FOUNDATION
                                             125 Broad Street, 18th Floor
                                             New York, NY 10004
                                             Tel: (212) 549-2500
                                             Fax: (212) 549-2654

                                             *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I. INTRODUCTION ......................................................................................................... 1

II. BACKGROUND ........................................................................................................... 2

   A. The Government Engages in Extensive Surveillance of Americans' Communications ............... 2

   B. The Government Has a Statutory Duty to Provide Notice When it Uses Information "Derived From" FISA or Title III Surveillance. ................................................... 4

   C. The Memoranda at Issue in this Case ................................................................ 6

III. ARGUMENT ............................................................................................................... 7

   A. FOIA's Strict Disclosure Obligations Are Intended to Prevent Agencies from Applying Secret Law. ........................................................................................ 7

   B. The Memoranda Must Be Disclosed Because They Are DOJ's "Working Law." .......................... 8

      1. Documents constituting the agency's effective law and policy fall outside Exemption 5. ...... 8

      2. The memoranda are working law. ............................................................ 10

      3. DOJ has adopted the memoranda. ............................................................ 12

   C. The Government Has Failed to Meet Its Burden of Demonstrating that the Memoranda Constitute Attorney Work Product. ............................................ 14

      1. The work-product privilege is limited in scope and does not protect all documents generated by Department of Justice attorneys. ................................................. 14

      2. Under the "specific-claim" test, the memoranda are not entitled to work-product protection. ........................................................................................ 15

      3. The memoranda are "dual purpose" documents that would have been created irrespective of the potential for litigation. ............................................... 18

      4. The Cover Memo is not attorney work product. ............................................ 21

   D. The Government Has Failed to Establish the Elements of Attorney-Client Privilege. ........... 21

   E. DOJ Has Failed to Segregate and Release All Non-Exempt Information. ............................ 24

   F. The Court Should Order DOJ to Disclose the Memoranda or, at a Minimum, Should Review the Documents *In Camera*. .......................................................... 25

IV. CONCLUSION ........................................................................................................... 25

PLTFS' OPP. TO DEFTS' MOT. FOR SUMM. JUDGMENT & CROSS-MOT. FOR SUMM. JUDGMENT
*ACLU of N. Cal., et al. v. DOJ*, Case No. 4:17-cv-03571 JSW

i

# CASES

*ACLU of N. Cal. v. DOJ,*
   70 F. Supp. 3d 1018 (N.D. Cal. 2014) .................................................... 14, 16, 17

*ACLU of N. Cal. v. FBI,*
   146 F. Supp. 3d 1168 (N.D. Cal. 2015) ......................................................... 23, 24

*ACLU v. DOJ,*
   210 F. Supp. 3d 467 (S.D.N.Y. 2016) ............................................................ 13, 19

*ACLU v. DOJ,*
   No. 13-7347, 2017 WL 1658780 (S.D.N.Y. 2017)................................................ 18

*Am. Imm. Council v. DHS,*
   905 F. Supp. 2d 206 (D.D.C. 2012) .................................................................... 16

*Assembly of State of Cal. v. Dep't of Commerce,*
   968 F.2d 916 (9th Cir. 1992) ................................................................................ 8

*Brennan Ctr. for Justice v. DOJ,*
   697 F.3d 184 (2d. Cir. 2012) ..................................................................... 9, 12, 13

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) .............................................................................................. 5

*Coastal States Gas Corp. v. Dep't of Energy,*
   617 F.2d 854 (D.C. Cir. 1980) ....................................................................... passim

*Ctr. for Biological Diversity v. OMB,*
   625 F. Supp. 2d 885 (N.D. Cal. 2009) ............................................................... 22

*Delaney, Migdail & Young, Chartered v. IRS,*
   826 F.2d 124 (D.C. Cir. 1987) ........................................................................... 17

*Dep't of State v. Ray,*
   502 U.S. 164 (1991) .............................................................................................. 7

*Dep't of the Air Force v. Rose,*
   425 U.S. 352 (1976) .............................................................................................. 7

*EPIC v. DOJ,*
   584 F. Supp. 2d 65 (D.D.C. 2008) ..................................................................... 22

*Feshbach v. SEC,*
   5 F. Supp. 2d 774 (N.D. Cal. 1997) ................................................................... 17

*Hasbajrami v. United States,*
   No. 1:13-cv-06852-JG, 2014 WL 4954596 (E.D.N.Y. 2014) ......................... 6, 13

*Hertzberg v. Veneman,*
   273 F. Supp. 2d 67 (D.D.C. 2003) ..................................................................... 18

*Hickman v. Taylor,*
   329 U.S. 495 (1947) ............................................................................................ 15

*Holmgren v. State Farm Mut. Auto. Ins. Co.,*
   976 F.2d 573 (9th Cir. 1992) .............................................................................. 14

*In re EchoStar Commc'ns Corp.,*
   448 F.3d 1294 (Fed. Cir. 2006)........................................................................... 15

*In re Grand Jury Subpoena,*
   357 F.3d 900 (9th Cir. 2004) .............................................................................. 19

*In re Sealed Case,*
   146 F.3d 881 (D.C. Cir. 1998) ..................................................................... 15, 17

*Jordan v. DOJ,*
  591 F.2d 753 (D.C. Cir. 1978) ........................................................................ 9, 16

*Judicial Watch v. DHS,*
  926 F. Supp. 2d 121 (D.D.C. 2013) ....................................................................... 16

*Kamman v. IRS,*
  56 F.3d 46 (9th Cir. 1995) ..................................................................................... 7

*Lane v. Dep't of Interior,*
  523 F.3d 1128 (9th Cir. 2008) ............................................................................. 25

*Matter of Fischel,*
  557 F.2d 209 (9th Cir. 1977) ............................................................................... 23

*Mead Data Central, Inc. v. Dep't of Air Force,*
  566 F.2d 242 (D.C. Cir. 1977) ............................................................................ 22

*Minier v. CIA,*
  88 F.3d 796 (9th Cir. 1996) ................................................................................... 8

*N.Y. Times Co. v. DOJ,*
  138 F. Supp. 3d 462 (S.D.N.Y. 2015) ............................................................. 12, 13

*NACDL v. DOJ Exec.Office for U.S. Attorneys,*
  829 F.3d 741 (D.C. Cir. 2016) ............................................................................ 18

*Nat'l Council of La Raza v. DOJ,*
  411 F.3d 350 (2d Cir. 2005) ........................................................................... 12, 13

*Nat'l Imm. Project of the Nat'l Lawyers Guild v. DHS,*
  842 F. Supp. 2d 720 (S.D.N.Y. 2012) ................................................................. 24

*NLRB v. Sears, Roebuck & Co.,*
  421 U.S. 132 (1975) ..................................................................................... passim

*North Pacifica LLC v. City of Pacifica,*
  274 F. Supp. 2d 1118 (N.D. Cal. 2003) .............................................................. 24

*Raytheon Aircraft v. U.S. Army Corps of Engineers,*
  183 F. Supp. 2d 1280 (D. Kan. 2001) ................................................................. 17

*SafeCard Servs., Inc. v. SEC,*
  926 F.2d 1197 (D.C. Cir. 1991) .......................................................................... 14

*Schiller v. NLRB,*
  964 F.2d 1205 (D.C. Cir. 1992) .......................................................................... 17

*Schlefer v. U.S.,*
  702 F.2d 233 (D.C. Cir. 1983) .......................................................................... 8, 9

*Senate of P.R. v. DOJ,*
  823 F.2d 574 (D.C. Cir. 1987) ............................................................................ 15

*Tax Analysts v. IRS,*
  117 F.3d 607 (D.C. Cir. 1997) ..................................................................... 8, 9, 11

*United States v. Martin,*
  278 F.3d 988 (9th Cir. 2002) ......................................................................... 22, 24

*United States v. Richey,*
  632 F.3d 559 (9th Cir. 2011) .............................................................................. 19

*Wiener v. FBI,*
  943 F.2d 972 (9th Cir. 1991) ......................................................................... 11, 25

## STATUTES

18 U.S.C. § 2517 ................................................................................................. 4

18 U.S.C. § 2518 ................................................................................................. 5

18 U.S.C. §§ 2510–22 ........................................................................................ 3

5 U.S.C. § 552 .................................................................................... 7, 10, 13, 25

50 U.S.C. § 1801 et seq. ..................................................................................... 3

50 U.S.C. § 1806 ................................................................................ 3, 5, 20, 21

50 U.S.C. § 1881a .............................................................................................. 3

## OTHER AUTHORITIES

154 Cong. Rec. S335 (daily ed. Jan. 25, 2008) ................................................ 5

Adam Liptak, *A Secret Surveillance Program Proves Challengeable in Theory Only*, N.Y. Times, July 15, 2013 .................................................................... 5

Admin. Office of the U.S. Courts, Wiretap Report 2016 ................................... 3

Barton Gellman, Julie Tate & Ashkan Soltani, *In NSA-Intercepted Data, Those Not Targeted Far Outnumber the Foreigners Who Are*, Wash. Post, July 5, 2014 ..................................................................................... 3

Charlie Savage, *Debate Brews Over Disclosing Warrantless Spying*, N.Y. Times, Sept. 30, 2014 ............................................................................................... 4

Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. Times, Oct. 16, 2013 ........................................................................................... 5, 10

Charlie Savage, *Federal Prosecutors, in a Policy Shift, Cite Warrantless Wiretaps as Evidence*, N.Y. Times, Oct. 26, 2013 .......................................................... 6

DOJ Office of Legal Counsel, Applicability of FISA's Notification Provision to Security Clearance Adjudications (June 3, 2011) .................................... 5, 21

DOJ, Guidance Regarding § 851 Enhancements in Plea Negotiations (Sept. 24, 2014) ............ 12

DOJ, Memorandum re: Department Charging and Sentencing Policy (May 10, 2017) ............. 11

Hearing Before the Subcommittee on Crime, Terrorism, and Homeland Security on H.R. 3179, 108th Cong. 14 (2004) .................................................... 4

Hearing to Consider the Nominations of John P. Carlin & Francis X. Taylor, 113th Cong. 25 (2014) ........................................................................ 6, 11, 13

DOJ, Revised FISA Use Policy as Approved by the Attorney General (Jan. 10, 2008). ....... 4, 20

Office of the Director of National Intelligence, 2016 Statistical Transparency Report 7 (Apr. 2017) ......................................................................................... 3

*Organization, Mission and Functions Manual*, DOJ ...................................... 22

*Organization, Mission and Functions Manual: Criminal Division*, DOJ .................. 10

*Organization, Mission and Functions Manual: National Security Division*, DOJ ........... 10

Privacy and Civil Liberties Oversight Board, Report on the Surveillance Program Operated Pursuant to Section 702 of FISA 59 (July 2, 2014) ................. 3

Sari Horwitz, *Justice is Reviewing Criminal Cases that Used Surveillance Evidence Gathered Under FISA*, Wash. Post, Nov. 15, 2013 ....................................... 6

*Sizing Up the Executive Branch—Fiscal Year 2016*, Office of Personnel

PLTFS' OPP. TO DEFTS' MOT. FOR SUMM. JUDGMENT & CROSS-MOT. FOR SUMM. JUDGMENT
*ACLU of N. Cal., et al. v. DOJ*, Case No. 4:17-cv-03571 JSW

iv

Management (June 2017)...................................................................................... 23

Zack Whittaker, *With a Single Wiretap Order, US Authorities Listened in on 3.3 Million Phone Calls*, ZDNet, June 30, 2017.................................................... 3

# RULES

Fed. R. Civ. P. 26 ...................................................................................................... 15

## I.     INTRODUCTION

Plaintiffs in this Freedom of Information Act ("FOIA") suit seek to shed light on the federal government's overarching policy position on when it must provide notice to individuals it has surveilled. Congress' purpose in enacting FOIA was to pierce the veil of administrative secrecy. The Department of Justice wrongly invokes privileges reserved for *litigation* in an effort to shield from public view its controlling *policy* on broad legal issues. The policy guidance documents at issue here do not meet the applicable tests for establishing the attorney work-product or attorney-client privileges. Instead, as documents that inform the public about what the government is doing and why, they represent the core of what FOIA requires agencies to disclose.

The Foreign Intelligence Surveillance Act ("FISA") and Title III of the Wiretap Act grant the federal government broad power to intercept the communications of Americans, including the communications of people not suspected of any wrongdoing. The government may seek to use the fruits of this surveillance not only in criminal prosecutions, but in immigration proceedings, asset-seizure proceedings, no-fly list designations, and other proceedings that significantly impact individuals' liberty and property. Because of this, the wiretapping statutes impose a duty on the government, in certain circumstances, to provide notice to the individuals whose privacy it has invaded. The two memoranda at issue here set forth the government's position on when it must provide this notice.

Because the government's surveillance is conducted in secret, notice is typically the only way individuals can discover that the government has read or listened in on their private communications. As a result, individuals' ability to challenge the surveillance in court depends, in great part, on whether the government is interpreting the statutory notice requirements correctly. Indeed, recent history shows that the Department of Justice improperly withheld notice of certain FISA surveillance for five years—based on an undisclosed notice policy—while the affected individuals remained completely in the dark. In response to the public backlash, the Department publicly claimed that it adopted a new, ostensibly lawful notice policy. Yet the Department has refused to disclose its new policy on when it must provide notice, and its

PLTFS' OPP. TO DEFTS' MOT. FOR SUMM. JUDGMENT & CROSS-MOT. FOR SUMM. JUDGMENT
*ACLU of N. Cal., et al. v. DOJ*, Case No. 4:17-cv-03571 JSW

1

interpretation is highly unlikely to emerge in the ordinary course. The problem is, in a sense, circular: Individuals who are wrongly deprived of notice of secret surveillance will almost never learn that fact. As a result, public disclosure of the government's notice policies through FOIA is especially critical. Absent disclosure of these documents in this action, it is virtually impossible for affected individuals to contest the government's failure to provide notice as a legal matter, and for the public to assess the government's practices as a policy matter.

Contrary to the government's claims, the two memoranda at issue are not exempt from disclosure under the work-product doctrine or attorney-client privilege. First, these documents contain DOJ's "working law," that is, rules or policies governing an agency's exercise of its official functions. These documents set forth an authoritative interpretation of the law addressed to all prosecutors as part of a policy shift within the Department of Justice that has been the subject of congressional testimony, court filings, and news reports. The documents' status as working law overrides the government's invocation of Exemption 5 here.

In any event, the documents—agency-wide guidance concerning the government's statutory obligation to provide notice of surveillance—are not entitled to work-product protection for two independent reasons. They do not address how to proceed in light of the specific claims or facts in any particular case. An agency's general policy, even on issues related to litigation, does not anticipate litigation in the manner required to establish the work-product privilege. And DOJ would have created these documents regardless of the prospect of litigation challenging the government's provision of notice because it has a need to implement its statutory obligations in a uniform, lawful manner.

Finally, the documents are not shielded by the attorney-client privilege because DOJ has failed to establish the identity of the client, that the memoranda were kept confidential, or that they were created by attorneys in their capacity as legal advisors, rather than policymakers.

## II.   BACKGROUND

### A.   The Government Engages in Extensive Surveillance of Americans' Communications.

Two statutory regimes grant the federal government broad power to intercept the communications of Americans, including the communications of people not suspected of any

wrongdoing. Each year, the government conducts hundreds of thousands of searches under the Foreign Intelligence Surveillance Act ("FISA") and the Wiretap Act ("Title III"). 50 U.S.C. § 1801 et seq.; 18 U.S.C. §§ 2510–22.[1]

Acting under the color of FISA, the federal government has asserted broad authority to monitor Americans' international emails and phone calls without a warrant. Section 702 of FISA, 50 U.S.C. § 1881a, allows the government to collect communications between Americans and more than 100,000 foreign "targets" absent any suspicion of wrongdoing or individualized judicial approval.[2] The government sweeps up hundreds of millions of communications under this authority each year and amasses that private information in databases for later use. Indeed, FBI agents in field offices around the country routinely search these databases as part of domestic law enforcement investigations that have no connection to the original surveillance.[3]

Title III authorizes the interception of communications in certain criminal investigations. *See* 18 U.S.C. §§ 2510–22. Such surveillance frequently results in the interception of communications by individuals who are merely in contact with or near the target, or who happen to use the same phone line. Given the ubiquity of electronic communications today, the scale of these interceptions can be staggering. For instance, relying on a single Title III wiretap order issued in 2016, the government captured 3.29 million cell phone communications.[4]

Both FISA and Title III authorize the government to "use and disclose" information derived from such surveillance with few constraints. *See* 50 U.S.C. § 1806(a) (use and disclosure

---

[1] In 2016, the government surveilled an estimated 106,469 targets under Section 702 of FISA in 2016. Office of the Director of National Intelligence, 2016 Statistical Transparency Report 7 (Apr. 2017), https://www.dni.gov/files/icotr/ic_transparecy_report_cy2016_5_2_17.pdf (attached as Diakun Decl., Ex. 5); *see also* Admin. Office of the U.S. Courts, Wiretap Report 2016, http://www.uscourts.gov/statistics-reports/wiretap-report-2016 (attached as Diakun Decl., Ex. 6).

[2] Barton Gellman, Julie Tate & Ashkan Soltani, *In NSA-Intercepted Data, Those Not Targeted Far Outnumber the Foreigners Who Are*, Wash. Post, July 5, 2014, http://wapo.st/1mVEPXG ("Nearly half of the surveillance files, a strikingly high proportion, contained names, e-mail addresses or other details that the NSA marked as belonging to U.S. citizens or residents.") (attached as Diakun Decl., Ex. 7).

[3] Privacy and Civil Liberties Oversight Board, Report on the Surveillance Program Operated Pursuant to Section 702 of FISA 59 (July 2, 2014), https://www.pclob.gov/library/702-Report.pdf.

[4] *See* Zack Whittaker, *With a Single Wiretap Order, US Authorities Listened in on 3.3 Million Phone Calls*, ZDNet, June 30, 2017, http://www.zdnet.com/article/one-federal-wiretap-order-recorded-millions-phone-calls (attached as Diakun Decl., Ex. 8).

authorized without subject's consent, as long as minimization procedures followed); 18 U.S.C. § 2517(1)–(2) (use and disclosure authorized if "appropriate to the proper performance of … official duties"). A DOJ policy issued in 2008 made clear that the government contemplated use of FISA-derived information both in criminal and "non-criminal proceedings" alike.[5] Indeed, the government has long made clear its interest in using the fruits of FISA surveillance in immigration proceedings, and the Treasury Department uses this information to freeze assets.[6] The government may also be using the information to place individuals on the no-fly list, deny visas, or reject license applications that require a security screening.[7]

### B.    The Government Has a Statutory Duty to Provide Notice When it Uses Information "Derived From" FISA or Title III Surveillance.

As part of FISA and Title III, Congress required the government to provide notice to individuals in certain circumstances when it uses information "derived from" surveillance. Yet DOJ has a checkered history of compliance with these statutory notice requirements. The agency previously misled the judiciary and the public about its practice of providing notice. When these misrepresentations came to light in 2013, DOJ responded to the ensuing controversy by publicly claiming that it had cured the infirmities with its prior practice and adopted a new policy. Yet DOJ's new notice policy remains secret to this day. The memoranda at issue here set forth the government's current position on its statutory notice obligations.

Under FISA, the government must provide notice in certain circumstances when it intends to use or disclose FISA-derived information. In particular, the government must provide notice when it has surveilled an individual and intends to use evidence derived from that surveillance against the person in a criminal prosecution, or when it seeks to "otherwise use" such information in "other proceeding[s]." 50 U.S.C. § 1806(c). The government has never

---

[5] DOJ, Revised FISA Use Policy as Approved by the Attorney General (Jan. 10, 2008), https://perma.cc/3WV2-9WZQ (attached as Diakun Decl., Ex. 9).
[6] *See, e.g.*, Hearing Before the Subcommittee on Crime, Terrorism, and Homeland Security on H.R. 3179, 108th Cong. 14 (2004) (statement of Daniel Bryant, Assistant Att'y Gen., Office of Legal Policy), http://commdocs.house.gov/committees/judiciary/hju93715.000/hju937150f.htm (attached as Diakun Decl., Ex. 10); Charlie Savage, *Debate Brews Over Disclosing Warrantless Spying*, N.Y. Times, Sept. 30, 2014, https://www.nytimes.com/2014/10/01/us/debate-simmers-over-disclosing-warrantless-spying.html (attached as Diakun Decl., Ex. 11).
[7] *See, e.g.*, Savage, *Debate Brews*, *supra* note 6.

identified the full range of proceedings in which it believes this notice requirement applies. Nonetheless, DOJ's Office of Legal Counsel has publicly disclosed a legal opinion concluding that notice under FISA is not limited to judicial proceedings, and members of Congress have expressed their belief that notice is required in "civil matters under the immigration laws."[8]

Title III similarly requires notice to parties when the government seeks to use information obtained or derived from a Title III wiretap against a person in "any trial, hearing, or other proceeding in a Federal or State court." 18 U.S.C. § 2518(9).

Despite these statutory obligations, the government has sometimes relied on undisclosed, internal policies to wrongly withhold notice from individuals. In its effort to defeat plaintiffs' standing in a civil challenge to Section 702 of FISA, the government in 2012 repeatedly assured the Supreme Court that others were better situated to bring suit—namely, defendants in prosecutions where the government would provide notice of Section 702 surveillance.[9] Yet in 2013, the *New York Times* reported that DOJ for five years had a policy that deprived defendants of notice that they had been surveilled under Section 702.[10] As it turns out, DOJ's National Security Division "ha[d] long used a narrow understanding of what 'derived from' means" in FISA to avoid giving notice.[11] When the Solicitor General learned of DOJ's narrow and undisclosed interpretation, he concluded that the policy "could not be justified legally."[12]

Later that year, DOJ changed its notice policy. The government provided notice to a handful of criminal defendants for the first time, and explained in multiple court filings that its

---

[8] 154 Cong. Rec. S335 (daily ed. Jan. 25, 2008) (statement of Sen. Kyl) (attached as Diakun Decl., Ex. 12); DOJ Office of Legal Counsel, Applicability of FISA's Notification Provision to Security Clearance Adjudications (June 3, 2011), https://fas.org/irp/agency/doj/olc/fisa-clear.pdf ("The reference to proceedings before a 'department, officer, agency, regulatory body, or other authority' strongly suggests that Congress did not intend to limit the application of the provision to judicial proceedings.") (attached as Diakun Decl., Ex. 13).

[9] *See* Adam Liptak, *A Secret Surveillance Program Proves Challengeable in Theory Only*, N.Y. Times, July 15, 2013, https://nyti.ms/2yxfh14 (attached as Diakun Decl., Ex. 14); Br. for Pets., *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) (No. 11-1025), 2012 WL 3090949, at *8 (attached as Diakun Decl., Ex. 15); Tr. of Oral Argument at 3–6, *Clapper*, 568 U.S. 398 (No. 11-1025), https://www.supremecourt.gov/oral_arguments/argument_transcripts/2012/11-1025.pdf (attached as Diakun Decl., Ex. 16).

[10] *See* Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. Times, Oct. 16, 2013, https://nyti.ms/2tZDU3H (attached as Diakun Decl., Ex. 17).

[11] *Id.*

[12] *Id.*

PLTFS' OPP. TO DEFTS' MOT. FOR SUMM. JUDGMENT & CROSS-MOT. FOR SUMM. JUDGMENT
*ACLU of N. Cal., et al. v. DOJ*, Case No. 4:17-cv-03571 JSW

5

new position was based upon "the government's determination that information obtained or derived from Title I FISA collection may, in particular cases, also be 'derived from' prior Title VII FISA collection."[13] This change, it said, was the result of a "careful review."[14]

When Members of Congress raised questions about DOJ's provision of notice in 2014, then-Acting Assistant Attorney General for National Security John P. Carlin publicly testified that DOJ's practice had been "reviewed and changed."[15] He also promised Congress that DOJ was taking measures to ensure that federal prosecutors across the country understood the department's new position.[16]

Notably, however, the details of DOJ's new notice policy remain secret to this day. Since 2013, DOJ has provided notice of Section 702 surveillance in fewer than ten known cases, despite the vast scale of this surveillance and its routine use in FBI investigations. Because of this continuing secrecy, neither the public nor affected individuals are able to assess whether DOJ's new notice policy is in fact as the agency has publicly described it, is correct as a matter of law, or is desirable as a matter of policy.

## C.    The Memoranda at Issue in this Case

In response to Plaintiffs' FOIA request, Defendant identified two documents: a memorandum titled "Determining Whether Evidence is 'Derived From' Surveillance Under Title III and FISA" ("the Notice Memo") and a cover memorandum attached to it ("the Cover Memo"). Kim Decl. ¶¶ 4–5. Both documents were prepared by "senior DOJ attorneys at the request of senior DOJ officials" and set forth DOJ's official position on "the Government's Title III and FISA notice obligations." *Id.* ¶ 6. The Cover Memo is addressed to "all federal

---

[13] *See, e.g.*, Charlie Savage, *Federal Prosecutors, in a Policy Shift, Cite Warrantless Wiretaps as Evidence*, N.Y. Times, Oct. 26, 2013, https://nyti.ms/2n9gb1p (attached as Diakun Decl., Ex. 18); Mem. in Opp. to Mot. to Compel Discovery at 29, *Hasbajrami v. United States*, No. 1:13-cv-06852-JG (E.D.N.Y. Aug. 8, 2014), ECF No. 79 (attached as Diakun Decl., Ex. 19).

[14] *Id.*; *see also* Sari Horwitz, *Justice is Reviewing Criminal Cases that Used Surveillance Evidence Gathered Under FISA*, Wash. Post, Nov. 15, 2013, http://wapo.st/177ZZi1 (describing the DOJ's "comprehensive review of all criminal cases" following its change in notice policy) (attached as Diakun Decl., Ex. 20).

[15] Hearing to Consider the Nominations of John P. Carlin & Francis X. Taylor, 113th Cong. 25 (2014) (statement of John P. Carlin), https://www.intelligence.senate.gov/sites/default/files/hearings/CHRG-113shrg93212.pdf (attached as Diakun Decl., Ex. 21).

[16] *Id.*

PLTFS' OPP. TO DEFTS' MOT. FOR SUMM. JUDGMENT & CROSS-MOT. FOR SUMM. JUDGMENT
*ACLU of N. Cal., et al. v. DOJ*, Case No. 4:17-cv-03571 JSW

6

prosecutors" and was jointly issued by the Chief of the National Security Division's Appellate Unit and the Chief of the Appellate Section of the DOJ Criminal Division. *Id.* ¶ 4. The Cover Memo briefly describes the Notice Memo and "comments more broadly on DOJ efforts to ensure legal compliance" in the discussed matters. *Id.* DOJ does not make any claim that these documents address the specific legal arguments or facts of any particular case. Defendants have withheld both memoranda under Exemption 5, citing the work-product and attorney-client privileges. *Id.* ¶¶ 8–12.

## III.   ARGUMENT

### A.   FOIA's Strict Disclosure Obligations Are Intended to Prevent Agencies from Applying Secret Law.

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). The Act "represents a strong congressional aversion to 'secret (agency) law,' . . . and represents an affirmative congressional purpose to require disclosure of documents which have 'the force and effect of law.'" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975).

To further this purpose, FOIA affirmatively requires agencies to make public specified categories of documents. *See* 5 U.S.C. § 552(a)(1)–(2). This includes "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register." *Id.* § 552(a)(2)(B). All other documents must also be made available to the public, unless they fall within one or more of FOIA's nine statutory exemptions from disclosure. *See id.* §§ 552(a)(3) & (b). Exemption 5, which the government invokes here, shields from disclosure documents which "would not be available by law to a party other than an agency in litigation with the agency." *Id.* § 552(b)(5). The Exemption thus incorporates discovery privileges that would apply in ordinary civil litigation. *Sears*, 421 U.S. at 148–49.

Nonetheless, because "disclosure, not secrecy, is the dominant objective of the Act," FOIA's exemptions "must be narrowly construed." *Rose*, 425 U.S. at 361; *accord Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995). Importantly, the government bears the burden of proving the applicability of any exemption. *See Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *see Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996).

**B.     The Memoranda Must Be Disclosed Because They Are DOJ's "Working Law."**

      **1.     Documents constituting the agency's effective law and policy fall outside Exemption 5.**

FOIA's core statutory purpose is reflected in the "working law doctrine," which is intended to prevent agencies from conducting official government business pursuant to secret rules and interpretations. *See Assembly of State of Cal. v. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) ("working law" doctrine "insures that the agency does not operate on the basis of 'secret law'"). As such "Exemption 5, properly construed, calls for 'disclosure of all 'opinions and interpretations' which embody the agency's effective law and policy…." *Sears*, 421 U.S. at 153. Agencies are thus prohibited from "develop[ing] a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980).

Applying these principles, courts have consistently rejected agency efforts to withhold documents characterized as non-binding but that provide authoritative guidance on the agency's interpretation of the law and how it is to perform its official duties. In *Coastal States*, the D.C. Circuit rejected the applicability of Exemption 5 for legal memoranda interpreting regulations used to guide the early steps of an audit. *Id.* at 859. It did not matter that the agency labeled its legal advice non-binding. *Id.* at 860, 867; *see also Schlefer v. U.S.*, 702 F.2d 233, 242–43, (D.C. Cir. 1983) (legal memoranda interpreting statutes and "provid[ing] important guidance" to the Chief Counsel for future cases were working law, even though not required to be "rigidly followed"); *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) ("considered statements of the agency's legal position" are working law, even if "nominally non-binding").

Rather than focusing on how an agency labels a document, courts focus on three important factors related to the document's author, audience, and purpose. First, courts have examined whether, given the context, a document's author is an authoritative voice on the question of agency policy at issue. *Coastal States*, 617 F.2d at 859, 867–70 (memoranda were working law when issued by regional counsel responsible for interpreting pertinent regulations);

PLTFS' OPP. TO DEFTS' MOT. FOR SUMM. JUDGMENT & CROSS-MOT. FOR SUMM. JUDGMENT
*ACLU of N. Cal., et al. v. DOJ*, Case No. 4:17-cv-03571 JSW

8

*Schlefer*, 702 F.2d at 239, 245 (discussing Chief Counsel's authority to interpret particular statutes and holding that administrative orders were working law).

Second, courts look at whether a document is "directed at [the author's] subordinates." *Jordan v. DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978) ("instructions or guidelines issued by the U.S. Attorney and directed at his subordinates" were agency's "effective policy").

Finally, courts consider whether a central authority has transmitted the document to an agency's local offices with the aim towards creating "coherent, consistent interpretations of . . . laws nationwide." *Tax Analysts*, 117 F.3d at 617; *see also Sears*, 421 U.S. at 141, 158 (final memoranda used by agency to formulate "a coherent policy" and "some measure of uniformity" were agency law subject to disclosure); *Coastal States*, 617 F.2d at 860 (illustrating the precedential value of documents by noting they were "circulated among the area offices").

Significantly, documents that constitute an agency's working law must be disclosed under FOIA, and this is so regardless of the particular Exemption 5 privilege invoked by the agency. "[W]hen what would otherwise be an exempt memorandum becomes non-exempt because of its status as 'working law,' . . . for all practical purposes it falls outside of Exemption 5." *Brennan Ctr. for Justice v. DOJ*, 697 F.3d 184, 208 (2d. Cir. 2012). The government attempts to cabin the scope of the working law doctrine, asserting that it defeats only the deliberative process privilege, but not other Exemption 5 privileges. *See* Gov't Br. 13. But in the seminal working law case, *Sears*, the Supreme Court required disclosure of documents it found to constitute the agency's working law, despite the government's assertion that they were shielded by the work-product privilege.[17] 421 U.S. at 149, 158–59. Those documents were far more case-specific than the memoranda at issue here. Indeed, when a document contains authoritative agency guidance on broad questions of law—rather than an analysis of specific litigation—the

---

[17] By contrast, the Court in *Sears* upheld the government's invocation of work-product privilege over other documents that anticipated specific litigation and where the government's position would inevitably be publicly disclosed, tested, and resolved through adversarial litigation in the particular case. 421 U.S. at 160. The same cannot be said of the memoranda at issue here. They contain only general guidance and it is far from inevitable that they would emerge in ordinary litigation, precisely because individuals deprived of notice have no idea that they were secretly surveilled. By definition, these individuals lack the very information they would need to raise the notice issue in court.

public's interest in knowing what law the agency is actually applying overrides any claim that disclosure would reveal case "strategy." Disclosure of working law accords with FOIA's affirmative requirement that "interpretations that have been adopted by the agency" be made public. 5 U.S.C. § 552(a)(2).

### 2.   The memoranda are working law.

The two memoranda contain an authoritative statement of DOJ's new notice policy. Despite the government's conclusory, self-serving assertion that the memoranda are non-binding, they bear the indicia of working law and as a result fall outside the scope of Exemption 5. They were prepared by high-ranking DOJ officials, after an extensive review, and were addressed to all federal prosecutors for the purpose of ensuring consistent compliance nationwide.

First, the memo's authors—"senior DOJ attorneys" and the Appellate Chiefs of the Criminal and National Security Divisions, Kim Decl. ¶¶ 4, 6—speak authoritatively for the agency on criminal enforcement, national security, and surveillance matters.[18]

Second, the memoranda were explicitly directed to the authors' subordinates: line federal prosecutors around the country. Kim Decl. ¶ 4.

Third, the circumstances surrounding the memoranda's creation and dissemination, as well as the government's declaration, demonstrate that the purpose of these memoranda was to ensure the consistent, nationwide implementation of DOJ's official position regarding notice. The memoranda, which are addressed to "all federal prosecutors," *id.*, reflect DOJ's course-correction after the Solicitor General discovered that the agency had made inaccurate representations to the Supreme Court and that its prior policy "could not be justified legally."[19] A high-level DOJ official assured Congress and the public that steps were being taken to ensure all federal prosecutors understood DOJ's new policy and that DOJ had undertaken an extensive

---

[18] *See Organization, Mission and Functions Manual: National Security Division*, DOJ http://bit.ly/2fWYrlc (NSD oversees "development . . . and implementation of Department-wide policies with regard to intelligence . . . and other national security matters") (attached as Diakun Decl., Ex. 22); *Organization, Mission and Functions Manual: Criminal Division*, DOJ, http://bit.ly/2wpgmXO (Criminal Division "[f]ormulate[s] and implement[s] criminal enforcement policy") (attached as Diakun Decl., Ex. 23).
[19] Savage, *Door May Open for Challenge to Secret Wiretaps*, *supra* note 10.

process to ensure proper implementation of FISA's notice requirements.[20] Indeed, the agency acknowledges that the memoranda at issue here pertain to "DOJ efforts to ensure legal compliance in the matters discussed." Kim Decl. ¶ 4. If these memoranda were *not* written and distributed for the purpose of ensuring consistent implementation of DOJ's new policy, then the agency's assurances to the public and Congress were hollow.

Although DOJ claims in its *brief* that the memoranda are non-binding, Gov't Br. 13, its *declaration* nowhere states that they contain such a disclaimer or that any supervisor informed line prosecutors they were non-binding. *See Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991) (government bears burden of proving exemptions through non-conclusory affidavits).[21] The only factual basis offered in the agency's declaration to support the claim that the memoranda are not "authoritative," is that the Cover Memo notes that the two documents are not "comprehensive guidance" and should be supplemented by additional legal research. Kim Decl. ¶ 7. But that is unsurprising, given that the memoranda do not purport to address the specifics of any particular case or cases. The fact that the memoranda do not address every conceivable issue or question raised by the notice statutes does not mean that the documents are not authoritative on those matters they *do* address. Nor does the fact that the memoranda provide "guidance" somehow take them out of the realm of official DOJ policy. DOJ has previously issued official policies—addressing prosecutors' responsibilities in a wide swath of criminal cases, as here—that are styled as "guidance."[22]

---

[20] Hearing to Consider the Nominations of John P. Carlin & Francis X. Taylor, *supra* note 15, at 25–26. The memoranda here reflect the culmination of that process. Although this testimony predates the documents at issue, it is not clear from the public testimony that the new policy had at that time been "reduced to a formal written policy" and "disseminated in . . . a written form." *See id.* at 25.

[21] Even if they did, an agency's designation of a document as "non-binding" is not dispositive of the working law inquiry. *See Coastal States*, 617 F.2d. at 860, 867; *Tax Analysts*, 117 F.3d at 617.

[22] For example, when Attorney General Sessions recently rescinded Attorney General Holder's agency-wide "guidance" on certain sentencing enhancements, he identified the Holder Guidance as a "previous policy of the Department of Justice." DOJ, Memorandum re: Department Charging and Sentencing Policy (May 10, 2017), https://www.justice.gov/opa/press-release/file/965896/download (attached as Diakun Decl., Ex. 24); *see* DOJ, Guidance Regarding § 851 Enhancements in Plea Negotiations (Sept. 24, 2014), https://www.justice.gov/oip/foia-library/ag_guidance_on_section_851_enhancements_in_plea_negotiations/download (attached as Diakun Decl., Ex. 25).

Disclosure of these memoranda would further FOIA's central purpose by ensuring that DOJ does not conceal surveillance from affected individuals on the basis of secret rules and interpretations.

### 3.    DOJ has adopted the memoranda.

In addition to constituting the agency's working law, the memoranda have been expressly adopted by DOJ. For this independent reason, they fall outside the ambit of Exemption 5.

There are two distinct routes to losing an Exemption 5 privilege, the working law doctrine and the related but distinct doctrine of express adoption. *Brennan*, 697 F.3d at 198–99, 207–08. Both doctrines are means of determining when a document contains an agency's effective law and policy—as opposed to merely the opinion or analysis of the document's author. The memoranda have been expressly adopted and therefore must be disclosed, notwithstanding any claim of work product or attorney-client privilege. *N.Y. Times Co. v. DOJ*, 138 F. Supp. 3d 462, 474–75 (S.D.N.Y. 2015) ("*NYT*") (adoption doctrine overcomes assertions of both work-product privilege and attorney-client privilege).

Express adoption—also referred to as incorporation by reference—occurs when an agency adopts a document's "reasoning and conclusions . . . in issuing its own decision." *Brennan*, 697 F.3d at 198. Express adoption occurs where, for example, high-ranking officials make public references to an internal legal analysis to "justify and explain" a change in agency policy and to "assure the public" that the new "policy was legally sound." *Id.*

Adoption, however, need not be "express" in the ordinary sense. *NYT*, 138 F. Supp. 3d at 474. "The agency need not even have explicitly mentioned any specific document in a public statement, so long as its conduct, considered as a whole, manifests an express adoption of the documents." *Id.* (citing *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350,358 n.5 (2d Cir. 2005)); *see also Coastal States*, 617 F.2d at 866 ("[A document] can lose [privileged] status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."). As the Supreme Court held in *Sears*, the doctrine also applies when an agency *internally* adopts a document by incorporating it into other statements of agency policy by reference. *See* 421 U.S. at 161. In either case, the express adoption of a document's

PLTFS' OPP. TO DEFTS' MOT. FOR SUMM. JUDGMENT & CROSS-MOT. FOR SUMM. JUDGMENT
*ACLU of N. Cal., et al. v. DOJ*, Case No. 4:17-cv-03571 JSW

12

reasoning as agency policy overrides the work-product and attorney-client privileges and compels disclosure. *NYT*, 138 F. Supp. 3d at 474.

Express adoption has occurred here. To quell the public controversy following revelations that DOJ had misrepresented its notice policy to the Supreme Court and had been unlawfully withholding notice for years, DOJ assured the courts and Congress alike that it had "reviewed and changed [its notice policy], so that now, defendants are receiving notice."[23] The Notice Memo memorializes this change in policy. Years in the making, the Notice Memo has existed within DOJ under the same name—in what it called "draft" form—since at least 2013.[24] In short, DOJ has publicly described a change in policy and publicly relied on that new policy to "assure the public," the courts, and Congress that its new "policy was legally sound." *Brennan*, 697 F.2d at 198. DOJ should not be allowed "to make public use of the Memorandum when it serves the Department's ends but claim . . . privilege when it does not." *La Raza*, 411 F.3d at 361.

Finally, DOJ has expressly adopted the FISA Memo through the Cover Memo. When a document is actually adopted or is otherwise referenced in a final statement of agency policy, it loses any protection under Exemption 5—even if that adoption originally occurs behind closed doors. *See Sears*, 421 U.S. at 161 ("[T]he public interest in knowing the reasons for a policy actually adopted by an agency" supports disclosure.); *cf.* 5 U.S.C. § 552(a) (requiring disclosure of "statements of general policy or interpretations of general applicability formulated and adopted by the agency"). The Cover Memo is the means by which DOJ adopted the underlying FISA Memo. The Cover Memo was signed by two high-ranking DOJ officials, formally

[23] Hearing to Consider the Nominations of John P. Carlin & Francis X. Taylor, *supra* note 15, at 25. The agency also repeatedly assured courts that it had carefully examined the issue and had reached a new "determination" about when evidence was "derived from" certain FISA surveillance. *See, e.g.*, Mem. in Opp. to Mot. to Compel Discovery at 29, *Hasbajrami*, *supra* note 13.

[24] *See* Ex. 1, Decl. of Mark A. Bradley at 4, *ACLU v. DOJ*, 210 F. Supp. 3d 467 (S.D.N.Y. 2016) (No. 13 Civ. 7347 (GHW)), ECF No. 49-1 (attached as Diakun Decl., Ex. 26). Under the express adoption doctrine, it does not matter that DOJ adopted and implemented its revised notice policy before reducing it to writing in the memoranda at issue here. The key question is whether the agency adopted the reasoning and conclusions underlying these memoranda. *NYT*, 138 F. Supp. 3d at 474. It makes sense that in some circumstances the government will articulate, revise, and implement a new policy before reducing it to writing. Through its public statements and filings in criminal cases, DOJ did just this.

distributed to prosecutors throughout the Department, and "summarizes the subject, content, and purpose of the [FISA Memo]." Kim Decl. ¶ 4. Because it has thus been expressly adopted as agency policy, the FISA Memo is not shielded from disclosure by Exemption 5.

### C.   The Government Has Failed to Meet Its Burden of Demonstrating that the Memoranda Constitute Attorney Work Product.

The two memoranda may not be withheld as work product because they contain agency-wide guidance concerning DOJ's statutory obligations to provide notice to individuals who have been surveilled. For that reason, they must be disclosed under both the "specific-claim" test and the "dual-purpose" doctrine. There is a crucial distinction between documents that reflect the government's policy on how it should conduct its official business, on the one hand, and documents that apply those rules to the facts of a specific case, on the other. Because the memoranda do not address a specific case or claim, they do not trigger protections reserved for traditional adversarial litigation. Moreover, under the dual-purpose doctrine, these documents would have been prepared even in the absence of litigation over notice—because, under the law, DOJ has an independent duty to disclose surveillance and it must ensure compliance with that requirement. DOJ's expansive interpretation of the work-product privilege would erase the critical distinction between government lawyers acting as policymakers and as litigators. In so doing, DOJ would exempt itself from much of FOIA, effectively "preclud[ing] almost all disclosure from an agency with substantial responsibilities for law enforcement." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203–04 (D.C. Cir. 1991).

### 1.   The work-product privilege is limited in scope and does not protect all documents generated by Department of Justice attorneys.

The work-product privilege does not apply "to every written document generated by an attorney." *Coastal States*, 617 F.2d at 864. Instead, the privilege "focuses on the integrity of the adversary trial process," *id.*, and is designed to serve a specific purpose: to "prevent exploitation of a party's efforts in preparing for litigation." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992). This "protect[s] the attorney's thought processes and legal recommendations from the prying eyes of his or her opponent." *ACLU of N. Cal. v. DOJ*, 70 F. Supp. 3d 1018, 1029 (N.D. Cal. 2014) (quoting *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294,

1301 (Fed. Cir. 2006)). Thus, the government may only claim work-product protection if it demonstrates that the documents were specifically created "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A).

The work-product privilege arose in the context of traditional adversarial litigation, in which application of this standard is more or less straightforward: the privilege shields the "mental impressions of an attorney" in the "preparation of a client's case." *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947). But assessing invocations of this privilege by the Department of Justice presents special difficulties because of the agency's dual functions, litigating particular cases but also setting policy for the agency and often other components of the United States government. Nonetheless, distinguishing between documents that would be entitled to work-product protection in traditional adversarial litigation and those that would not is critical: "[w]hile it may be true that the prospect of future litigation touches virtually any object of a DOJ attorney's attention, if the agency were allowed 'to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'" *Senate of P.R. v. DOJ*, 823 F.2d 574, 586–87 (D.C. Cir. 1987).

### 2.    Under the "specific-claim" test, the memoranda are not entitled to work-product protection.

Where, as here, the government is acting in its sovereign capacity to enforce or apply the law, courts have applied the "specific-claim" test to determine if documents are entitled to work-product protection. *See, e.g.*, *In re Sealed Case*, 146 F.3d 881, 885 (D.C. Cir. 1998) (observing that specific-claim test applies when government lawyers act "as prosecutors or investigators of suspected wrongdoers"). Under this test, "[t]he documents must at least have been prepared with a *specific claim* supported by *concrete facts* which would likely lead to litigation in mind." *Coastal States*, 617 F.2d at 865 (emphasis added). A number of courts—including a court in this district—have used this test to distinguish between overarching government policies and case-oriented attorney work product. This test has the advantage of acknowledging the many roles of government actors, ensuring that the work-product privilege is not over-extended to categorically exempt all documents related to law enforcement, including DOJ's prosecutorial function.

*Coastal States* is instructive. There, the D.C. Circuit held that government attorneys' interpretations of agency regulations provided to agency staff conducting regulatory compliance audits were not work product where the agency "neglected to supply the court with sufficient facts . . . to permit a conclusion that in fact specific claims had arisen." *Coastal States*, 617 F.2d at 866; *see also Jordan*, 591 F.2d at 775 (the documents did not merit work-product protection because they were not "prepared in anticipation of a particular trial," but "were promulgated as general standards to guide the Government lawyers in determining whether or not to bring an individual to trial in the first place").

A court in this district also recently applied the specific-claim test to distinguish between DOJ documents that concern general legal standards and documents that apply those standards to specific cases. *See ACLU of N. Cal.*, 70 F. Supp. 3d (appeal pending). Ordering disclosure of portions of the USABook, which functions as a "reference guide for federal prosecutors," the district court concluded that "guidelines and manuals for U.S. attorneys are not work product" because "[e]ven though documents might be prepared literally in anticipation of litigation, they do not anticipate litigation in the manner that the privilege requires if they do not ensue from any particular transaction." *Id.* at 1032, 1034 (quotation marks omitted). Other courts have adopted the same approach. *See Judicial Watch v. DHS*, 926 F. Supp. 2d 121, 143–44 (D.D.C. 2013) ("agency policies and instructions regarding the exercise of prosecutorial discretion in civil immigration enforcement" subject to disclosure under FOIA, while documents setting forth "attorneys' reasons for declining to prosecute in specific cases" properly withheld as work product); *Am. Imm. Council v. DHS*, 905 F. Supp. 2d 206, 211, 222 (D.D.C. 2012) (documents relating to "the role of counsel in immigration proceedings" and "whether an INS regulation creates a right to counsel for people seeking admission as refugees" subject to disclosure under FOIA because they did not "ensu[e] from any 'particular transaction'").

The specific-claim test applies here because the government is unequivocally acting in its sovereign capacity when it conducts wiretaps and makes use of that private information. The documents address the government's obligation to provide notice when it "investigat[es] . . . suspected wrongdo[ing]" by engaging in certain forms of surveillance. *In re Sealed Case*, 146

F.3d at 885 (observing that specific-claim test applies when government lawyers act "as prosecutors or investigators of suspected wrongdoers"). In this case, there is no "specific claim." The documents set forth the government's general policy on when notice must be provided; they do not address whether a specific criminal defendant must be provided notice. *See* Kim Decl. ¶¶ 6–7 (FISA Memo "set[s] forth the basic law and legal frameworks at issue" and was intended, in part, to provide "legal guidance for [senior DOJ officials] regarding the Government's Title III and FISA notice obligations"). Even if these documents could be fairly characterized as including general litigation strategies in the broadest sense, they do not anticipate litigation in the manner that the privilege requires because they do not examine any particular case or analyze any concrete facts. *ACLU of N. Cal.*, 70 F. Supp. 3d at 1032; *Coastal States*, 617 F.2d at 865.

Most of the cases the government cites in its brief are not to the contrary. Several address situations in which the court held that there *was* a specific claim or, at a minimum, "a suspicion of specific wrongdoing" relating to an individual investigation. *See, e.g.*, *Raytheon Aircraft v. U.S. Army Corps of Engineers*, 183 F. Supp. 2d 1280, 1290 (D. Kan. 2001); *Feshbach v. SEC*, 5 F. Supp. 2d 774, 782 (N.D. Cal. 1997). Others address contexts where the government was *not* acting as a sovereign. Both *Schiller v. NLRB*, 964 F.2d 1205 (D.C. Cir. 1992), and *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124 (D.C. Cir. 1987), involve documents that describe the government's litigation defense strategies and thus involve the government's proprietary interests in minimizing civil liability. In *Delaney*, the court held that memoranda that advised the IRS "of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome" were protected under the work-product privilege. 826 F.2d at 127. In *Schiller*, the court held that documents that discussed defense strategies to limit the government's liability for attorney's fees were protected work product.[25] 964 F.2d at 1208. Unlike this case, *Delaney* and *Schiller* both involve government attorneys providing legal analysis for the purpose of insulating their agency clients

---

[25] Moreover, the wisdom of *Schiller* has recently been called into serious question, with Judge Sentelle writing in his *NACDL* concurrence (in which Judge Edwards joined) that he "believe[s] that *Schiller* was wrongly decided in the first instance." *NACDL*, 844 F.3d at 258–59 (Sentelle, J., concurring).

from civil liability. *See also Hertzberg v. Veneman*, 273 F. Supp. 2d 67 (D.D.C. 2003) (defendant agency "reasonably expected to be sued in connection with the firing operation [and] gathered the witness statements in order to defend itself in litigation"). Where government attorneys are defending the government's proprietary interests, the work product analysis resembles other cases between ordinary private litigants. But where the government creates documents in the exercise of a sovereign function—like law enforcement—the specific-claim test aids courts in distinguishing between policymaking that broadly affects members of the public and actual case preparation.

DOJ also relies heavily on *NACDL v. DOJ Executive Office for United States Attorneys*, 829 F.3d 741 (D.C. Cir. 2016), and a Southern District of New York case that was "greatly informed" by *NACDL. See* Gov't Br. 10; *ACLU v. DOJ*, No. 13-7347, 2017 WL 1658780 (S.D.N.Y. 2017). But the *NACDL* decision is so at odds with the principles of the work-product privilege that two of the three panel members urged reversal en banc. Judge Sentelle, joined by Judge Edwards, wrote that he felt "compelled" by D.C. Circuit precedent to concur even though "the normative and perhaps ethical implications of extending this protection to a prosecutorial manual are sufficient to give pause." 844 F.3d at 258 (Sentelle, J., concurring). The values at stake in that case—and this one—are high, because "[t]here is no area in which it is more important for the citizens to know what their government is up to than the activity of the Department of Justice in criminally investigating and prosecuting the people." *Id.* at 259. The Court here is not constrained by any such precedent. It should reject an interpretation of the work-product privilege that is "inconsistent both with the statutory purpose of FOIA and the longstanding values of justice in the United States." *Id.*

### 3. The memoranda are "dual purpose" documents that would have been created irrespective of the potential for litigation.

Even if this Court declines to apply the specific-claim test, the government still cannot meet its burden of demonstrating that the memoranda are attorney work product because DOJ would have created guidance for implementing the government's notice obligations in substantially similar form regardless of the prospect of litigation.

Some documents are created for a "dual purpose." *See In re Grand Jury Subpoena*, 357

F.3d 900, 907 (9th Cir. 2004). "Dual purpose documents are deemed prepared because of litigation if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011). This test asks whether the document "would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena*, 357 F.3d at 908 (quotation marks omitted). In *Richey*, taxpayers submitted an appraisal report with their tax returns to support the value of a charitable deduction; the IRS subsequently conducted an investigation and issued a summons for the appraisal. Applying the dual-purpose test, the Ninth Circuit held that the appraisal was not prepared in anticipation of litigation: "Had the IRS never sought to examine" the tax returns, the taxpayers "would still have" submitted the appraisal to justify the tax deduction. 632 F.3d at 568.

It is clear from the government's description of the documents in this case—and from its prior descriptions of drafts of the Notice Memo—that these documents serve a purpose distinct from any litigation: they are a high-level policy guide to obligations imposed on DOJ by Congress. Even though DOJ now seeks to avoid explicitly acknowledging that these memoranda describe DOJ "policy," it nonetheless acknowledges that senior DOJ officials commissioned the memoranda as "guidance" for themselves regarding the government's notice obligations. Kim Decl. ¶ 6. Indeed, DOJ explicitly describes this request for "guidance" as distinct from the documents' litigation-related purpose. *Id.* ("Both memoranda were written . . . at the request of senior DOJ officials seeking *both* legal guidance for themselves . . . , and a way to assist DOJ attorneys . . . preparing for or during litigation) (emphasis added). Most tellingly, however, DOJ openly acknowledged in a previous case that drafts of the Notice Memo contained "policy advice regarding the government's best practice for implementation of its obligations." *See* Decl. of Mark A. Bradley at ¶ 19, *ACLU v. DOJ*, 210 F. Supp. 3d 467 (S.D.N.Y. 2016) (No. 13 Civ. 7347 (GHW)), ECF No. 49 [hereinafter "Bradley Decl."] (attached as Diakun Decl., Ex. 27).

Given this dual purpose, these documents would unquestionably "have been created in substantially similar form"—regardless of any particular criminal prosecution or challenge to the provision of notice (or lack thereof) in a particular prosecution. This is so for three reasons.

First, DOJ has a need for authoritative guidance because it must implement its statutory notice obligations in a uniform manner across nearly one hundred U.S. Attorneys Offices around the country. The government must conduct surveillance and fulfill its notice obligations—as any other official function—in a lawful, consistent way, regardless of whether DOJ's conduct ever faces a subsequent challenge in court. Indeed, contrary to DOJ's claims, the government recognized the need for guidance with respect to prosecutors' notice obligations years before any specific or impending litigation arose around this question. *See, e.g.*, DOJ, Revised FISA Use Policy as Approved by the Attorney General at 2, *supra* note 5 (requiring NSD to "issue guidance on what constitutes information 'derived from' FISA collections by March 31, 2008"). As the Kim Declaration indicates—although obliquely—these memoranda set out to impose a consistent policy across those many offices and the Department's thousands of prosecutors. *See* Kim Decl. ¶ 5 (stating that the Notice Memo contains a discussion of "what steps Department attorneys should take to ensure they are complying with the relevant law").

Second, prosecutors must determine if the obligation to provide notice applies regardless of whether an aggrieved person seeks to litigate that question. *See* 50 U.S.C. § 1806(c). Despite DOJ's effort to cast the Notice Memo as about litigation strategy, prosecutors routinely apply these rules in proceedings where notice is never litigated at all. DOJ has an independent statutory duty to provide notice. *Id.* Thus, prosecutors must apply the policy and give notice, where required, whether or not the party in any particular case ever demands it. In these cases, there is simply no need for litigation over notice. At the same time, in cases where prosecutors apply the policy and conclude that notice is *not* required, litigation is also extremely rare. That is because individuals have no inkling that they were surveilled and no idea that notice has been withheld based on an undisclosed policy. DOJ's application of this policy is completely invisible to the affected parties, who do not even know they have claims to raise. What this means is that in the vast majority of surveillance cases, DOJ assesses its statutory duties—as it must—even though the issue of notice will never be litigated.[26]

---

[26] Relatedly, DOJ may have notice obligations even outside the context of traditional "litigation." The notice requirement applies in "any trial, hearing, or other proceeding," 50 U.S.C. § 1806(c), and OLC has acknowledged that this extends beyond traditional "judicial proceedings." *See* DOJ

Third, in practical terms, the documents at issue here were created "because of" an acute public relations problem for the DOJ. This need arose because the Solicitor General had told the Supreme Court that DOJ would provide notice of Section 702 surveillance when, in fact, it was not. In response to the ensuing public controversy and congressional scrutiny, DOJ undertook a policy reassessment. Although this process began in 2013, the Notice Memo is the culmination of this process. *See* Exhibit 1 at 4, Bradley Decl., *supra* note 24 (describing drafts of a memorandum with the same title as the memorandum at issue in this case).

In sum, it is clear that the memoranda were created to fulfill a critical policy function. They were designed to ensure that prosecutors uniformly and consistently fulfilled their notice obligations, regardless of whether any particular notice decision ever came to light or was challenged in court. These documents would have been created in substantially similar form without the prospect of litigation and are not entitled to work-product protection.

### 4.       The Cover Memo is not attorney work product.

DOJ has withheld the Cover Memo in its entirety, but that document simply describes how DOJ attorneys are to read and use the authoritative guidance in the Notice Memo. The Cover Memo does not provide litigation strategies in and of itself, let alone those specific to a particular case. It is difficult to conceive how disclosing this document could possibly compromise the "integrity of the trial process" in *any* case. *See Coastal States*, 617 F.2d at 864. None of the purposes of the work-product privilege could possibly be served by withholding this document. DOJ has not established that the privilege applies to the Cover Memo.

### D.       The Government Has Failed to Establish the Elements of Attorney-Client Privilege.

DOJ now asserts the attorney-client privilege over these documents, relying on vague and conclusory statements that fall short of establishing the privilege. The privilege is "strictly construed," and applies only under the following, limited circumstances: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the

---

Office of Legal Counsel, *supra* note 8. DOJ had a need to prepare these guidance memoranda because officials must determine if the obligation to provide notice applies in these "other proceeding[s]," as well.

communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002); *see also Ctr. for Biological Diversity v. OMB*, 625 F. Supp. 2d 885, 892 (N.D. Cal. 2009) (applying *Martin* test in FOIA case). Although DOJ bears the burden of establishing all of these requirements, *Mead Data Central, Inc. v. Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977), it has failed to do so here for at least four reasons: it has failed to (1) identify the "client"; (2) demonstrate that disclosure would reveal confidential client information; (3) show that the documents were in fact kept confidential; and (4) establish that the attorneys in the alleged attorney-client relationship were acting in their capacities as "legal advisors," rather than as policymakers, and that the clients solicited legal advice rather than policy guidance.

First, DOJ has failed to specify who is the "client" in the alleged attorney-client relationship. If the party invoking the privilege fails to provide sufficient information to establish the identity of the client and the existence of an attorney-client relationship, it cannot rely on the privilege. *See Ctr. for Biological Diversity*, 625 F. Supp. 2d at 892–93 ("OMB cannot rely on the attorney-client privilege for the challenged documents" in part because "the declarations do not identify which of [the] stated parties is the attorney."). DOJ's declaration vaguely states that the Cover Memo was addressed to "all federal prosecutors" and that "[b]oth memoranda were written and reviewed by groups of senior DOJ attorneys at the request of senior DOJ officials." Kim Decl. ¶¶ 4, 6. At another point in the declaration, it states that the "memoranda were sought by the government's decision-makers and their representatives." Kim Decl. ¶ 12. But DOJ is a huge agency, made up of at least thirty-nine components that exercise widely varying functions. *See, e.g.*, *Organization, Mission and Functions Manual*, DOJ, https://www.justice.gov/ jmd/organization-mission-and-functions-manual (attached as Diakun Decl., Ex. 28). Without specific information identifying the client, the Court cannot determine whether an attorney-client relationship existed between the authors of the two memoranda and the purported client. *See, e.g.*, *EPIC v. DOJ*, 584 F. Supp. 2d 65, 79–80 (D.D.C. 2008) (refusing to find that "the attorney-client privilege applies" in part because the "declarations do not indicate what agency or

PLTFS' OPP. TO DEFTS' MOT. FOR SUMM. JUDGMENT & CROSS-MOT. FOR SUMM. JUDGMENT
*ACLU of N. Cal., et al. v. DOJ*, Case No. 4:17-cv-03571 JSW

22

executive branch entity is the client").

Second, DOJ has not established that the client's confidential information would be revealed by disclosure. *Compare Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) (the attorney-client privilege "extends to those papers prepared by an attorney . . . provided the papers are based on *and would tend to reveal* the client's confidential communications") (emphasis added), *with* Kim Decl. ¶ 12 (stating only that the "advice is based in part on confidential information provided by the DOJ attorneys who sought creation of the memoranda").

Third, because DOJ has not identified the client, it has not established another critical element of the attorney-client privilege: that the memoranda were actually maintained in confidence. The fundamental purpose of the attorney-client privilege is the "protection of confidential facts," which cannot be "made known to persons other than those who need to know them." *Coastal States*, 617 F.2d at 863. DOJ must therefore "submit[] evidence that substantiates its claim that the communications were confidential in fact," and failure to do so precludes reliance on the attorney-client privilege. *See ACLU of N. Cal. v. FBI*, 146 F. Supp. 3d 1161, 1168 (N.D. Cal. 2015). DOJ has not stated precisely who received the memoranda, vaguely claiming that they were kept confidential because "they were circulated only within the Executive Branch." Kim Decl. ¶ 12. But the Executive Branch employs over two million people,[27] the vast majority of whom have nothing at all to do with federal criminal prosecutions, let alone those that implicate the notice provisions in FISA and Title III. Indeed, in light of its careful phrasing, DOJ's declaration strongly suggests that the memoranda were in fact distributed to outside agencies, as well as personnel across DOJ who had no actual need to receive them. *See id.* In short, simply asserting that the memoranda were circulated only within the Executive Branch does nothing to establish that they have been maintained in confidence in the manner the privilege requires.

Third, DOJ has failed to establish that the client sought legal, rather than policy, advice,

---

[27] *Sizing Up the Executive Branch—Fiscal Year 2016*, Office of Personnel Management at 4 (June 2017), https://www.opm.gov/policy-data-oversight/data-analysis-documentation/federal-employment-reports/reports-publications/sizing-up-the-executive-branch-2016.pdf (attached as Diakun Decl., Ex. 29).

and—relatedly—that the "attorney" in the alleged attorney-client relationship was acting in his or her capacity as a professional legal adviser, rather than as a policymaker. *See Martin*, 278 F.3d at 999. "The fact that a person is a lawyer does not make all communications with that person privileged," *id.*; instead, in order to qualify for the privilege, the "primary purpose" of the consultation must have been to obtain legal advice. *See North Pacifica LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1128 (N.D. Cal. 2003). Thus, when an attorney conveys advice on policy issues, the communication is not protected by the attorney-client privilege. *Nat'l Imm. Project of the Nat'l Lawyers Guild v. DHS*, 842 F. Supp. 2d 720, 729 n.10 (S.D.N.Y. 2012) ("FOIA prohibits agencies from treating their policies as private information. Thus, attorney-client privilege simply does not apply to statements of policy."); *ACLU of N. Cal.*, 146 F. Supp. 3d at 1169 (concluding that the FBI had not established attorney-client privilege in part because it "ha[d] not provided sufficient information to determine whether the [documents] consist of advice about specific legal questions and situations, or whether they clarify broadly applicable FBI policies"). Although the Kim Declaration avoids acknowledging that the Notice Memo contains policy advice, DOJ previously informed a court that drafts of this document contained "policy advice regarding the government's best practices for implementation of its obligations." Bradley Decl. ¶ 19. DOJ's present declaration obfuscates the purpose and content of the memoranda, but the factual context demonstrates that they are primarily or at least equally concerned with policy and thus not protected.

## E.   DOJ Has Failed to Segregate and Release All Non-Exempt Information.

Although DOJ asserts that it conducted a segregability review, *see* Kim Decl. ¶ 13, its view of the privileges is so expansive that this review was an empty exercise. DOJ takes the overly broad position that any document prepared in anticipation of litigation is privileged in its entirety, *see* Gov't Br. 14, such that it could not release a single shred of information from documents addressing two public statutes. But FOIA requires DOJ to segregate non-exempt material, *see* 5 U.S.C. § 552(b)(9), including statements of policy, general rules and procedures, and legal interpretations that it has expressly adopted. DOJ's all-encompassing view of its privileges would eviscerate this requirement, depriving the public of critical information.

1

### F.   The Court Should Order DOJ to Disclose the Memoranda or, at a Minimum, Should Review the Documents *In Camera*.

2     DOJ has failed to carry its burden as to privilege and segregability. Not only is its

3 declaration vague and conclusory, but the government's assertion that this is not a policy

4 memorandum is undermined by its previous description of a draft of this document as containing

5 "policy advice." *See* Bradley Decl. ¶ 19; *Wiener*, 943 F.2d at 977–78 (agency must provide

6 sufficient facts to satisfy burden of demonstrating applicability of exemptions). Plaintiffs

7 therefore respectfully request that the Court deny DOJ's motion for summary judgment and

8 order that the memoranda be disclosed.

9     In the alternative, Plaintiffs request that the Court review these memoranda *in camera*. To

10 be sure, *in camera* review is "not a substitute for the government's burden of proof, and should

11 not be resorted to lightly due to the *ex parte* nature of the process and the potential burden placed

12 on the court." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1136 (9th Cir. 2008) (quotation marks

13 omitted). But an order from this Court requiring the government to augment its declaration

14 would delay resolution and, in all likelihood, leave much about these documents in doubt.

15 Moreover, Plaintiffs respectfully submit that *in camera* review of the two memoranda at issue

16 here, totaling only thirty-four pages, would not place a significant burden on the Court. *See id.*

17 ("relative brevity" of documents rendered case "appropriate instance for in camera inspection")

18 (quotation marks omitted).

19 ## IV.   CONCLUSION

20     For the foregoing reasons, the Court should deny Defendant's motion for summary

21 judgment and grant Plaintiffs' motion for summary judgment. Neither the Notice Memo nor the

22 Cover Memo are protected by the work-product or attorney-client privileges and both must be

23 disclosed as the agency's effective law and policy. In the alternative, the Court should order

24 Defendant to submit the memoranda for *in camera* review.

25

26

27

28

Dated: September 29, 2017

By: _____ _/s/ Linda Lye_____

Linda Lye
Matthew Cagle
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437

Patrick Toomey (admitted *pro hac vice*)
Anna Diakun (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2654

*Attorneys for Plaintiffs*