Linda Lye (CA SBN 215584)
llye@aclunc.org
Matthew T. Cagle (CA SBN 286101)
mcagle@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437

Patrick Toomey (admitted *pro hac vice*)
ptoomey@aclu.org
Anna Diakun (admitted *pro hac vice*)
adiakun@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2654

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO-OAKLAND DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA; AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION,<br><br>        Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>        Defendant. | Case No. 4:17-cv-03571 JSW<br><br>PLAINTIFFS' REPLY<br><br>Hearing Date: November 17, 2017<br>Time: 9:00 a.m.<br>Judge: Hon. Jeffrey S. White<br>Courtroom: 5, 2nd Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………………..ii

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT ...................................................................................................... 1

   A.  The Memoranda Are Not Attorney Work-Product. ....................................... 1

      1.  Withholding these documents would not serve the purpose of the
         work-product privilege......................................................................... 1

      2.  The specific-claim test confirms that these memoranda are not protected
         by the work-product privilege.............................................................. 5

      3.  The documents would have been created in substantially similar form
         regardless of any litigation purpose. .................................................. 7

   B.  DOJ Has Not Met Its Burden Of Establishing The Attorney-Client Privilege........................ 10

      1.  Defendant has still failed to identify the client agency......................... 10

      2.  The memos were not kept confidential................................................ 11

      3.  Defendants failed to demonstrate that disclosure would reveal confidential
         client information................................................................................ 13

      4.  Defendant has not established that the memos involve legal rather than
         policy advice. .................................................................................... 14

   C.  The Memoranda Contain DOJ's Effective Law and Policy. ........................ 15

      1.  The memoranda are quintessential "working law."............................. 15

      2.  DOJ has adopted the policy contained in these memoranda................. 17

      3.  Documents that embody an agency's effective law and policy may not be
         withheld under the attorney-client or work-product privileges. ............ 18

   D.  The Court Should Order Disclosure Or Conduct An *In Camera* Review ................... 20

# TABLE OF AUTHORITIES

**Cases**

*[Redacted]*, 2011 WL 10945618 (FISA Ct., Oct. 3, 2011) .............................................................10, 13

*ACLU v. DOJ*,
    70 F. Supp. 3d 1018 (N.D. Cal. 2014) ............................................................... *passim*

*ACLU v. DOJ*,
    No. 12 Civ. 7412(WHP), 2014 WL 956303 (S.D.N.Y. Mar. 11, 2014).......................................12, 16

*ACLU v. FBI*,
    146 F. Supp. 3d 1161 (N.D. Cal. 2015) ............................................................11, 12

*American Immigration Council v. DHS*,
    905 F. Supp. 2d 206 (D.D.C. 2012) ............................................................3, 4, 7

*Assembly of State of Cal. v. Dep't of Commerce*,
    968 F.2d 916 (9th Cir. 1992) ............................................................16

*Brennan Ctr. v. DOJ*,
    697 F.3d 184 (2d Cir. 2012)............................................................18

*Brinton v. Dep't of State*,
    636 F.2d 600 (D.C. Cir. 1980)............................................................13

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ............................................................ *passim*

*Ctr. for Biological Diversity v. OMB*,
    625 F. Supp. 2d 885 (N.D. Cal. 2009) ............................................................10, 11

*Cuban v. SEC*,
    744 F. Supp. 2d 60 (D.D.C. 2010) ............................................................13

*Dep't of Air Force v. Rose*,
    425 U.S. 352 (1976)............................................................2

*Dep't of the Navy v. Egan*,
    484 U.S. 518 (1988)............................................................9

*Elec. Priv. Info. Ctr. v. Dep't of Justice*,
    584 F. Supp. 2d 65 (D.D.C. 2008)............................................................11

*Families for Freedom v. CBP*,
    837 F. Supp. 2d 287 (S.D.N.Y 2011)............................................................15

*Federal Open Market Committee of the Federal Reserve System v. Merrill*,
    443 U.S. 340 (1979)............................................................19

*Feshbach v. SEC*,
   5 F. Supp. 2d 774 (N.D. Cal. 1997) ............................................................20

*In re Fischel*,
   557 F.2d 209 (9th Cir. 1977) ............................................................13

*Fox v. Shinseki*,
   No. C 11-04820 EDL, 2013 WL 11319070 (N.D. Cal. June 11, 2013) ..............................12

*In re Grand Jury Subpoena*,
   357 F.3d 900 (9th Cir. 2004) ............................................................7, 8, 10

*In re Grand Jury Subpoena Duces Tecum*,
   112 F.3d 910 (8th Cir. 1997) ............................................................12

*Hamilton v. Yavapai Cmty. College Dist.*,
   No. CV-12-08193-PCT-GMS, 2016 WL 8199307 (D. Ariz. Nov. 2, 2016) .......................12

*Hasbajrami v. United States*,
   2014 WL 495492 (E.D.N.Y. 2014)............................................................17

*Hatamian v. Advanced Micro Devices, Inc.*,
   No. 14-CV-00226-YGR(JSC), 2016 WL 2606830 ............................................................4

*Jordan v. DOJ*,
   591 F.2d 753 (D.C. Cir. 1978) ............................................................7, 15

*Judicial Watch, Inc. v. DHS*,
   926 F. Supp. 2d 121 (D.D.C. 2013) ............................................................7

*Kamman v. IRS*,
   56 F.3d 46 (9th Cir. 1995) ............................................................10

*Maine v. U.S. Dep't of Interior*,
   298 F.3d 60 (1st Cir. 2002)............................................................13, 20

*Marbury v. Madison*,
   1 Cranch 137 (1803) ............................................................16

*Mead Data Central, Inc. v. U.S. Dept. of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ............................................................10, 11, 13

*N.Y. Times Co. v. DOJ*,
   138 F. Supp. 3d 462 (S.D.N.Y. 2015)............................................................18, 19

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975)............................................................16, 17, 19

*North Pacifica LLC v. City of Pacifica*,
   274 F. Supp. 2d 1118 (N.D. Cal. 2003) ............................................................15

*NRDC v. Dep't of Defense,*
   388 F.Supp.2d 1086 (C.D. Cal. 2005) ..................................................................13

*In re Pacific Pictures Corp.,*
   679 F.3d 1121 (9th Cir. 2012) ............................................................................12

*In re Premera Blue Cross Customer Data Security Breach Litig.,*
   No. CV 11-04820 EDL, 2017 WL 4857596 (D. Or. Oct. 27, 2017) ......................9

*Schlefer v. United States,*
   702 F.2d 233 (D.C. Cir. 1983) .....................................................................13, 14

*Senate of Puerto Rico v. U.S. Dep't of Justice,*
   823 F.2d 574 (D.C. Cir. 1987) ............................................................................6

*Tax Analysts v. IRS,*
   117 F.3d 607 (D.C. Cir. 1997) ...............................................................15, 18, 19

*Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs,*
   60 F.3d 867 (1st Cir. 1994) ................................................................................1

*United States v. Bauer,*
   132 F.3d 504 (9th Cir. 1997) .............................................................................15

*United States v. Chen,*
   99 F.3d 1495 (9th Cir. 1996) .............................................................................15

*United States v. Nobles,*
   422 U.S. 225 (1975) ...........................................................................................3

*United States v. Richey,*
   632 F.3d 559 (9th Cir. 2001) ..............................................................................8

*Wiener v. FBI,*
   943 F.2d 972 (9th Cir. 1991) .............................................................................18

**Statutes**

5 U.S.C. § 552.......................................................................................... *passim*

18 U.S.C. § 2518(9) ......................................................................................7

50 U.S.C. § 1806 ..................................................................................... *passim*

**Other Authorities**

Adam Liptak, *A Secret Surveillance Program Proves Challengeable in Theory Only,*
   N.Y. TIMES (July 15, 2013) .................................................................................5

*Additional Prehearing Questions for JOhn Carlin Upon His Nomination to be Assistant
   Attorney General for National Security Department of Justice,* 1, 9-10, 113th Cong.
   25 (2014) ...................................................................................................18

Charlie Savage, *Debate Brews Over Disclosing Warrantless Spying*, N.Y. TIMES (Sept. 30, 2014) ...................................................................................................9, 10, 13

Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. TIMES (Oct. 16, 2013) .........................................................................................................2, 14, 15

Charlie Savage, *Power Wars, Inside Obama's Post-9/11 Presidency 586-93 (2015)* .............................14

Department of Justice Office of Legal Counsel, *Applicability of FISA's Notification Provision to Security Clearance Adjudications* (June 3, 2011)...........................................4, 9

Department of Justice Office of Legal Policy, "Mission" .........................................................14

Department of Justice, *Revised FISA Use Policy as Approved by the Attorney General* (Jan. 10, 2008),.................................................................................................4

H.R. Rep. No. 93-876 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6271 .........................................20

*Hearing to Consider the Nominations of John P. Carlin & Francis X. Taylor*, 113th Cong. 25 (2014) (Statement of John P. Carlin) ..........................................................2, 18

1  **I.      INTRODUCTION**

2          The documents in this case contain the government's position on when it must provide

3  notice to individuals it has secretly surveilled. Disclosure of these documents would serve

4  FOIA's core purpose—to prevent the government from making secret agency law. DOJ's use of

5  an earlier, unlawful notice policy significantly thwarted adversarial challenges to Section 702 of

6  FISA for years. Although DOJ was forced to modify that policy, its new policy is secret, too.

7  Here, DOJ impermissibly seeks to shroud its policy documents under the cloak of inapplicable

8  legal privileges. While high-ranking DOJ officials may be attorneys, they are also policymakers.

9  When attorneys perform a "policymaking" role, they "cease[] to function as lawyers" and legal

10  privileges no longer apply. *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867,

11  884 (1st Cir. 1994). The specific-claim test and dual-purpose doctrine distinguish between

12  documents authored in a legal as distinct from policymaking capacity. The subject matter of

13  these documents confirm that their authors were performing a policymaking function: deciding

14  important policy questions—under a legal regime with room for interpretation—about how the

15  federal government should comport itself when it uses its power as sovereign to conduct

16  secretive surveillance. Neither the work-product nor the attorney-client privilege shields the

17  government's policy on how to implement its statutory duty to provide notice.

18  **II.     ARGUMENT**

19          **A.      The Memoranda Are Not Attorney Work-Product.**

20          DOJ's arguments hinge on an incorrect and overbroad understanding of the work-product

21  privilege: that simply because these high-level policy memoranda regulate the government's

22  conduct in legal proceedings, they were prepared "in anticipation of litigation." But that position

23  is inconsistent with the purpose of the privilege, which shields only those documents whose

24  disclosure would impair the integrity of the adversarial process. Courts have used the "specific-

25  claim" test and the "dual-purpose" test to define the outer limits of the privilege. Under both

26  tests, DOJ may not withhold the Notice Memo and the Cover Memo.

27                  **1.      Withholding these documents would not serve the purpose of the
                            work-product privilege.**

28          DOJ's invocation of the work-product privilege must be rejected in light of both the

purpose of the privilege and the actual purpose for which these documents were developed. To be sure, the documents regulate DOJ's conduct in legal proceedings. But that alone is not enough. Because disclosure would not impair the integrity of the adversarial system, these memoranda were not prepared "in anticipation of litigation" in the manner the privilege requires.

Because "disclosure, not secrecy, is the dominant objective of the Act," FOIA's exemptions "must be narrowly construed." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). The scope of the work-product privilege must therefore be interpreted scrupulously by reference to its purpose, which "is not to protect any interest of the attorney, who is no more entitled to privacy or protection than any other person, but to protect the adversary trial process itself." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980). Documents that would permit adversaries "to probe each other's thoughts and plans concerning [their] case" may be shielded, *id.*; documents that stop short of revealing such information, leaving the adversarial process intact, are unprotected. This analysis helps courts judge whether documents were created "in anticipation of litigation" within the meaning of the privilege.

Here, the events that spurred the creation of the Notice Memo and the Cover Memo shed light on their purpose and whether disclosure would unfairly intrude on any attorney's "thoughts and plans." The memoranda were created after it became clear that DOJ was systematically depriving criminal defendants of the notice to which they were statutorily entitled. DOJ sought to diffuse public controversy by replacing its old, unlawful policy with a new policy.[1] Indeed, DOJ was publicly criticized for misleading the Supreme Court about its old notice policy and DOJ officials were questioned before Congress about the agency's failure to give notice of surveillance in cases where the statute plainly required it.[2] DOJ then publicly represented that it had adopted a new, Department-wide interpretation of the statute, and ultimately memorialized that change in these memoranda.[3] Given this context, disclosure is consistent with both the purpose and limits of the work-product privilege for three overarching reasons.

---

[1] *See* Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. TIMES (Oct. 16, 2013), https://nyti.ms/2tZDU3H (attached as Diakun Decl., Ex. 17).
[2] *See, e.g., id.*
[3] *Hearing to Consider the Nominations of John P. Carlin & Francis X. Taylor*, 113th Cong. 25 (2014) (statement of John P. Carlin), https://www.intelligence.senate.gov/sites/default/files/hearings/CHRG-113shrg93212.pdf (attached as Diakun Decl., Ex. 21).

First, DOJ prepared these memos not in anticipation of any litigation, but rather to clarify as a matter of Department-wide policy "how the Government should comply with FISA's notice obligation." *Compare* Kim Decl. ¶ 12, *with United States v. Nobles*, 422 U.S. 225, 237 (1975) (privilege allows attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy" in "preparation of a client's case."). Congress imposed on the government a mandatory duty to provide notice in certain circumstances when it uses FISA- and Title III-derived information. Precisely because the surveillance is secret, the government must comply with that obligation, even if no individual demands notice. These memoranda were prepared to address the public and congressional backlash when it came to light that the government had been violating that statutory duty.

Second, there is a critical difference between documents that set policy for legal proceedings and documents that would reveal actual case preparation. *American Immigration Council v. DHS*, 905 F. Supp. 2d 206 (D.D.C. 2012), rejected the government's work-product argument as to a memorandum interpreting an agency's legal obligation, under binding regulations, to permit access to counsel in immigration proceedings, even though it pertained to legal proceedings and, in some formalistic sense, was prepared in anticipation of litigation. After reviewing the memorandum *in camera*, the court found that it sought to provide "the best interpretation of the regulation at issue, with no hint that the decision was influenced by litigation, let alone that the memo was written 'because of' litigation." *Id.* at 222. Therefore, even though the memorandum was providing legal advice "to the agency in contemplation of contested administrative hearings," Def's Reply 22, *Am. Imm. Council*, 1:11-cv-01971-JEB (D.D.C. Sept. 6, 2012), ECF. No. 20 (attached as Cagle Decl., Ex. 6), the court concluded that the memorandum was not "written 'because of' litigation" in the manner required by the work-product privilege. *Id.* at 222.

This reasoning applies here. The Notice Memo "set[s] forth the basic law and legal frameworks at issue," with "a focus on the present state of the law on when evidence is 'derived from' electronic surveillance under Title III and FISA." Kim Decl. ¶¶ 5, 7. It also discusses "how the Government should comply with FISA's notice provision." *Id.* ¶ 12. The Cover Memo

"comments more broadly on DOJ efforts to ensure legal compliance in the matters discussed." *Id.* ¶ 4. According to DOJ, these memoranda appear to put forward the agency's "best interpretation of the [statute] at issue," *Am. Imm.*, 905 F. Supp. 2d at 222. Indeed, DOJ openly acknowledged in a previous case that drafts of the Notice Memo contained "policy advice regarding the government's best practices for implementation of its obligations." *See* Diakun Decl., Ex. 27. Like the policy memorandum in *American Immigration*, these memoranda were not created "because of" impending litigation. Because disclosure would not reveal any attorney's "thoughts or plans" in preparing a case, it would not impair the adversarial process.

DOJ's general references to the memoranda's "strategic considerations" are not sufficient to establish they were prepared "in anticipation of litigation" and are, in fact, consistent with their policy-setting function. *See* Kim Decl. ¶¶ 5, 7, 12. Because the core question addressed by the documents is "how the Government *should* comply with FISA's notice provision." *Id.* ¶ 12 (emphasis added), these may be strategic *policy*, rather than litigation, considerations. Indeed, DOJ openly acknowledged in a previous case that drafts of the Notice Memo contained "policy advice regarding the government's best practices for implementation of its obligations." *See* Diakun Decl., Ex. 27. Moreover, courts have rejected work-product claims for documents, like those here, that function as "guidance," even though DOJ asserted they "discuss[d] potential legal strategies … that might be considered by federal prosecutors." *See ACLU v. DOJ*, 70 F. Supp. 3d 1018, 1035 (N.D. Cal. 2014) (ordering disclosure of DOJ's location-tracking surveillance guidance documents); *see also Hatamian v. Advanced Micro Devices, Inc.*, No. 14-CV-00226-YGR(JSC), 2016 WL 2606830, *6-7 ("documents that merely set forth a general strategy . . . that might relate to or be relevant to future litigation are not prepared in anticipation of a particular trial" and therefore cannot be withheld as work-product).[4]

Third, because of the secrecy that surrounds electronic surveillance, DOJ's effort to

---

[4] Judging by DOJ's past disclosures, it appears to agree that not every document addressing or analyzing FISA's notice requirement would reveal sensitive work-product. The Office of Legal Counsel has disclosed a detailed, eight-page legal analysis of whether the notice requirement applies in certain administrative "proceedings." DOJ Office of the Legal Counsel, *Applicability of FISA's Notification Provision to Security Clearance Adjudications* (June 3, 2011), https://fas.org/irp/agency/doj/olc/fisa-clear.pdf (attached as Diakun Decl., Ex. 13); *see also* DOJ, Office of Legal Counsel, *Revised FISA Use Policy as Approved by the Attorney General* (Jan. 10, 2008), https://perma.cc/3WV2-9WZQ (attached as Diakun Decl., Ex. 9).

withhold its notice policy actually *undermines* the adversarial process. *Coastal States,* 617 F.2d at 864 (purpose of privilege "is not to protect any interest of the attorney . . . but to protect the adversary trial process itself"). It short-circuits almost all adversarial litigation over whether DOJ is interpreting its statutory obligations correctly, because both the individuals affected and the public remain completely in the dark. Recent history makes clear exactly how, in this area, DOJ's refusal to disclose even its basic policies serves to thwart adversarial litigation. It enabled DOJ to unlawfully withhold notice of Section 702 surveillance from every single defendant who was entitled to it for five years.[5] No defendant could challenge the policy because no defendant knew that DOJ had secretly narrowed its notice obligation to the point of vanishing. Although DOJ has publicly stated that it has since modified its policy, no one knows whether it is now interpreting its statutory obligations correctly. DOJ claims that its policy will emerge in court in the fullness of time, but that is a false promise. *See* Gov't Reply 12 n.10. Individuals who receive notice have no reason to inquire into DOJ's policy; and individuals deprived of notice are, by definition, unaware that they were subject to secret surveillance at all. Conversely, if defendants are aware of the underlying rationale for providing or not providing notice, they can test its legal basis in court. In this case, disclosure would thus enhance, rather than impair, "the integrity of our system." *Coastal States*, 617 F.2d at 864. Application of the privilege to these guidance documents is especially inappropriate here because non-disclosure has long been used to stymie adversarial litigation altogether. For this overarching reason, the privilege does not apply.

## 2. The specific-claim test confirms that these memoranda are not protected by the work-product privilege.

DOJ makes no claim that the memoranda here address any specific case. Thus, if the specific-claim test applies, the memoranda must be disclosed.

DOJ points to some cases rejecting the specific-claim test, but other courts have found it a vital tool for determining where government claims of privilege end. *See* Pl. Br. 15-16 (citing cases supporting specific-claim test). Although the Ninth Circuit has not ruled on the issue, another court of this district has embraced this test. In *ACLU v. DOJ*, the court applied the

---

[5] *See* Adam Liptak, *A Secret Surveillance Program Proves Challengeable in Theory Only*, N.Y. TIMES (July 15, 2013), http://www.nytimes.com/2013/07/16/us/double-secret-surveillance.html. (attached as Diakun Decl., Ex. 14).

specific-claim test and ordered disclosure in an analogous context: DOJ policies on the type of legal authorization prosecutors must obtain to engage in location-tracking surveillance. 70 F.Supp. 3d 1018, 1031 (N.D. Cal. 2014). As that court explained, in reasoning fully applicable here, when DOJ issues "general standards to guide the Government's lawyers," the documents "might be prepared literally in anticipation of litigation," but "they do not anticipate litigation in the manner the privilege requires if they do not ensu[e] from any particular transaction." *Id.* (internal quotation marks, citations omitted).

This Court should likewise apply the test here. The specific-claim test ensures that the work-product privilege is not improperly extended beyond its purpose, given the public's pressing interest in the law and policy applied by the Executive Branch. The test protects the government's litigation needs by protecting from disclosure documents reflecting actual case preparation: analysis of issues arising in specific cases, disclosure of which would unfairly advantage an adversary. But it does not shield documents reflecting the exercise of a sovereign function: those that set policy for how the government handles certain legal issues, disclosure of which serves the salutary purpose of ensuring agencies do not create secret law. Distinguishing between specific analyses and general guidance is especially necessary where government agencies exercise sovereign functions—like investigations and prosecutions—that routinely lead to court proceedings. In that context, everything could be said to be literally in anticipation of litigation. Indeed, the entire Department of Justice exists because of the prospect of the United States' involvement in litigation. But such an approach clearly reaches too far. *See Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 586–87 (D.C. Cir. 1987) ("While it may be true that the prospect of future litigation touches virtually any object of a DOJ attorney's attention, if the agency were allowed 'to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'") (citation omitted).

Even if DOJ were correct that the specific-claim test applies only to investigative materials, Gov't Reply 5–6, the test would apply here. These documents relate directly to investigations: they explain how the government determines when it must disclose its reliance on

investigative information obtained via FISA or Title III surveillance. In any event, courts have used the specific-claim test well outside the investigative context in determining whether the privilege applies to: a memorandum interpreting regulations concerning the right to counsel, *see Am. Imm. Council*, 905 F. Supp. 2d at 222; slides used in training USCIS employees, *see id.*; U.S. Attorney policies and guidelines for handling certain offenses, *see Jordan v. DOJ*, 591 F.2d 753, 757 (D.C. Cir. 1978); and "agency policies and instructions regarding the exercise of prosecutorial discretion in civil immigration enforcement," *see Judicial Watch, Inc. v. DHS*, 926 F. Supp. 2d 121, 143 (D.D.C. 2013). DOJ's general policy position on its statutory duties in legal proceedings fall into the same category: They govern important sovereign functions affecting the rights of individuals who face imprisonment or other impairments of their liberty.

> ### 3.    The documents would have been created in substantially similar form regardless of any litigation purpose.

Even if this Court declined to apply the specific-claim test, DOJ still could not meet its burden. The test for dual-purpose documents is whether they "would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004) (quotation marks omitted).

Even if the memoranda serve a litigation function, DOJ acknowledges they have another purpose: "Both memoranda were written . . . at the request of senior DOJ officials seeking *both* legal guidance for themselves . . . , and a way to assist DOJ attorneys . . . preparing for or during litigation." Kim Decl. ¶ 6 (emphasis added). Distinct from any litigation purpose, DOJ's "senior DOJ officials" had the separate purpose of seeking "legal guidance for themselves." *Id.* This makes plain what is obvious from context: The documents contain a high-level policy guide setting forth the agency's position on its statutory obligations. *See also* Diakun Decl., Ex. 27.

Plaintiffs previously identified several reasons why DOJ would have produced these documents in substantially similar form, regardless of the prospect of litigation. *See* Pl. Br. 20–21. First, DOJ has an obligation, as part of two larger statutory schemes governing intrusive forms of surveillance, to provide notice under certain circumstances to individuals it has surveilled. *See* 50 U.S.C. § 1806(c); 18 U.S.C. § 2518(9). Unless it were to act in a completely *ad hoc* manner, the federal government must develop policies regarding the manner in which it

executes its official duties—here, surveillance and notice—lawfully and consistently, regardless of whether any criminal defendant would ever seek to challenge notice. DOJ had a need to develop authoritative guidance to implement its notice obligations uniformly across the country, especially after it had failed to provide the notice required by law for years. The memoranda serve the distinct purpose of bringing uniformity to DOJ's implementation of its statutory obligations. Second, "[t]he circumstances surrounding the[se] document[s'] preparation" demonstrate that they were prepared in response to a public relations crisis, not in anticipation of litigation. *In re Grand Jury Subpoena*, 357 F.3d at 908. There were "independent purpose[s] for creating [these] document[s]," ones that are "truly separable" from any use in adversarial litigation. *Id.* DO has addressed neither of these independent purposes.

DOJ elides the broader purposes these document serve, claiming instead that Plaintiffs would narrow work-product protection to only those issues that are actually contested by defendants in their cases. *See* Gov't Reply 3. This is not Plaintiffs' argument. Rather, Plaintiffs point out that notice is rarely litigated because of the inherent secrecy of the surveillance, while emphasizing that DOJ has an independent statutory duty to provide notice. This means that DOJ must develop and apply a consistent policy for providing notice, regardless of whether it initiates a criminal prosecution using FISA or Title III surveillance against any particular person, or any such defendant challenges notice. *See* Pl. Br. 20. In other words, even if there were no litigation over notice, actual or anticipated, DOJ would still need to have a policy for determining when the statute requires notice and when it does not. That is strong evidence the documents serve an overarching policy purpose independent of any litigation purpose DOJ might claim.

This analysis is consistent with the Ninth Circuit's dual-purpose precedent. In *United States v. Richey*, 632 F.3d 559 (9th Cir. 2001), the Ninth Circuit found an appraisal report attached to a taxpayer's return to have had a dual purpose, and concluded that it was not prepared in anticipation of litigation because the report was prepared "as required by law" (to justify the value of a tax deduction claimed): "Had the IRS never sought to examine the Taxpayers' 2003 and 2004 federal income tax returns, the Taxpayers would still have been required to attach the appraisal to their 2002 federal income tax return." *Id.* at 568. Similarly, DOJ must provide notice

"as required by law," and would therefore need a policy implementing this requirement, whether or not it initiates any particular criminal prosecution using FISA- or Title III-derived information, or anyone ever challenges notice.

Moreover, the notice obligation may well apply in non-litigation, non-adversarial contexts. As a result, the government would have had the need for consistent guidelines on notice for these non-litigation, non-adversarial purposes. The FISA statute requires notice to be provided "*[w]henever* the Government intends" to use "*any information* obtained or obtained" from FISA surveillance in "any trial, hearing, *or other proceeding* in or before *any* court, department, officer, agency, regulatory body, *or other authority* of the United States." 50 U.S.C. § 1806(c) (emphasis added). The language of the statute is broad and appears to extend the notice obligation outside the context of strictly adversarial proceedings in the courts or administrative bodies. Indeed, the federal government may be using FISA-derived information to place individuals on the no-fly list, deny visas, or reject license applications that require a security screening.[6] The process for obtaining a security clearance is typically not adversarial or subject even to administrative, let alone judicial, review. *See*, *e.g., Dep't of the Navy v. Egan*, 484 U.S. 518 (1988) (Merit System Protection Board lacked authority to review Navy's denial of security clearance). Perhaps use in a security clearance determination would trigger the statutory notice obligation, or perhaps not. The court need not decide the precise scope of the notice obligation in this case; but DOJ, as the party claiming the privilege, bears the burden of showing that the documents would not have been created in substantially similar form but for the prospect of litigation. *See, e.g., In re Premera Blue Cross Customer Data Security Breach Litig.*, No. CV 11-04820 EDL, 2017 WL 4857596, at * 8 (D. Or. Oct. 27, 2017). Given the plain language of the statute, DOJ has failed to demonstrate that the notice obligation extends solely to adversarial settings, and thus it has failed to establish that the memoranda serve exclusively a litigation function.[7]

---

[6] Charlie Savage, *Debate Brews Over Disclosing Warrantless Spying*, N.Y. TIMES (Sept. 30, 2014) https://www.nytimes.com/2014/10/01/us/debate-simmers-over-disclosing-warrantless-spying.html (attached as Diakun Decl., Ex. 11).
[7] DOJ Office of Legal Counsel, Applicability of FISA's Notification Provision to Security Clearance Adjudications (June 3, 2011), 6 n.9,  https://fas.org/irp/agency/doj/olc/fisa-clear.pdf,

**B.     DOJ Has Not Met Its Burden Of Establishing The Attorney-Client Privilege.**

For four independent reasons, DOJ has failed to meet its burden of "prov[ing] the applicability of [the attorney-client] privilege." *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977). DOJ's declaration impermissibly "rel[ies] upon conclusory and generalized allegations of exemptions" and fails to set forth "facts sufficient to establish [the claimed] exemption." *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (internal quotation marks, citations omitted).

**1.     Defendant has still failed to identify the client agency.**

DOJ has still failed to identify the client agency. Although its reply *brief* now states: "the client is of course the Justice Department itself," Gov't Reply 17 (citing Kim Decl. ¶ 12), the cited paragraph of the *declaration* states no such thing. *See Ctr. for Biological Diversity v. OMB*, 625 F. Supp. 2d 885, 892 (N.D. Cal. 2009) (agency failed to establish attorney-client privilege where facts necessary to establish privilege found only in brief but not declaration). Instead, the declaration states that the "memoranda were sought by *the Government's decision-makers* and their representatives." Kim Decl. ¶ 12 (emphasis added). The declaration uses the term "DOJ" or "Department" to refer to the Justice Department (*id.* at ¶ 1), affirmatively implying that "the Government" is an entity distinct from defendant DOJ. The federal government is a large entity with many conceivable decision-makers at many different agencies who may have had an interest in advice related to FISA and Title III surveillance, including decision-makers at the National Security Agency, the Central Intelligence Agency, and the Treasury Department, all of which use FISA information. *See, e.g.*, [*Redacted*], 2011 WL 10945618 (FISA Ct., Oct. 3, 2011); Savage, *Debate Brews* (attached as Diakun Decl., Ex. 11); Nat'l Sec. Div., Nov 5, 2015 FOIA Response to ACLU (attached as Cagle Decl., Ex. 2).

(attached as Diakun Decl., Ex. 13) ("Whether the term 'proceeding' as used in section 106(c) refers only to an adversarial process is a question we need not decide."). DOJ argues that the memoranda "would not have been created in a form that included litigation strategy if they were not created in anticipation of legal disputes in legal proceedings." Gov't Reply 4. Even assuming the documents contain some material that could in fact be considered protected "litigation strategy," as opposed to strategic policy considerations, that still would not be dispositive: the dual-purpose test does not require that the document would have been created in *identical* form without the prospect of adversarial litigation, but only that it would have been created in a "substantially similar form." *In re Grand Jury Subpoena*, 357 F.3d at 908.

With respect to these memoranda, perhaps DOJ was "the client." But to invoke the privilege, DOJ's declaration "needs to say so." *Ctr. for Biological Diversity*, 625 F. Supp. 2d at 892 (rejecting claim of attorney-client privilege); *see Elec. Priv. Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 79-80 (D.D.C. 2008) ("The Bradbury declarations do not indicate what agency or executive branch entity is the client for purposes of the attorney-client privilege.").[8]

### 2.     The memos were not kept confidential.

Assuming that DOJ was the "client," its declaration negates a key element on which it bears the burden—that the memoranda were kept confidential. *See Mead*, 566 F.2d at 253.

Where, as here, the client is an agency, dissemination must be limited to "those members of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication." *ACLU v. FBI*, 146 F. Supp. 3d 1161, 1168 (N.D. Cal. 2015). DOJ identifies three groups to whom the documents were made available: They were "addressed" to one group, "circulated to" another, and "accessed only by" a third. Kim Decl. ¶ 12. Under any of these formulations, the memoranda were not kept confidential. *ACLU v. FBI*, 146 F.Supp. 3d at 1168 (privilege inapplicable given document's "wide distribution").

First, the Cover Memo, and presumably the Notice Memo for which it was the cover, was "addressed . . . to 'all federal prosecutors.'" Kim Decl. ¶ 4. But there are thousands of federal prosecutors whose responsibilities span a wide range of subject matters—ranging from antitrust to civil rights and beyond—that may never overlap with the content of these documents. Cagle Decl., Ex.1. DOJ's dissemination of these documents to "all federal prosecutors" demonstrates that no "attempt had been made to limit disclosure of the documents to the agency personnel responsible for" issues related to FISA and Title III surveillance and notice. *Coastal States*, 617 F.2d at 863-64 (rejecting attorney-client privilege where document circulated beyond agency staff "who need to know"); *see also id*. at 863 (insufficient to limit "circulation . . . to the confines of the agency"). DOJ knows how to maintain confidentiality by limiting distribution.

---

[8] Elsewhere the declaration states that the memoranda "were written … at the request of senior DOJ officials." Kim Decl. ¶ 6. But DOJ's declarant also avers that the memoranda were "sought by the Government's decision-makers and their representatives." Kim Decl. ¶ 12. If the senior DOJ officials who requested the memos did so in a representative capacity, then it would be "the Government's decision-makers" at unspecified agencies, and not their DOJ representatives, who were the "client(s)."

*Cf. ACLU v. DOJ*, No. 12 Civ. 7412(WHP), 2014 WL 956303, at *1 (S.D.N.Y. Mar. 11, 2014) (memo distributed only to criminal and appellate chiefs with instructions to distribute within office "only when relevant to an investigation or case"). It failed to do so here.

Second, DOJ states that the documents "were circulated only within the Executive Branch" (Kim Decl. ¶ 12), in a concession that they were circulated outside the purported client agency, DOJ. In recognition of the obvious waiver problem, it asserts a common interest privilege. *See also* Gov't Reply 18 n.14. But to establish that privilege, DOJ would have to point to "evidence" of "a joint strategy in accordance with some form of agreement—whether written or unwritten"; "a shared desire to see the same outcome in a legal matter is insufficient." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). Its passing suggestion of a "common interest" among Executive agencies does not suffice. *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997) (generalized "assertion that 'we all want to obey the law'" insufficient); *Hamilton v. Yavapai Cmty. College Dist.*, No. CV-12-08193-PCT-GMS, 2016 WL 8199307, at *3 (D. Ariz. Nov. 2, 2016) (implicit shared interest in legal matter's outcome insufficient); *Fox v. Shinseki*, No. C 11-04820 EDL, 2013 WL 11319070, at *4, (N.D. Cal. June 11, 2013) (plaintiff failed to describe common legal issues or specific legal interests).

Third, DOJ further avers that the documents were "*accessed* only by Government lawyers working on the issues addressed by the memoranda." Kim Decl. ¶ 12 (emphasis added). But the issue is how widely the memoranda were "distribut[ed]," *ACLU v. FBI*, 146 F. Supp. 3d at 1168. DOJ cannot avoid waiver by suggesting that a widely distributed document was only actually accessed or read by a smaller subset of recipients. In the absence of an established "common interest," maintaining confidentiality would have required confining distribution to *DOJ* attorneys "working on the issues addressed by the memoranda." Kim Decl. ¶ 12. Instead, DOJ waived the privilege by granting access to lawyers elsewhere within the Executive Branch at unspecified "Government" agencies outside the supposed DOJ client.[9]

---

[9] Although DOJ does not provide the Court with this information, the Treasury Department appears to have received one or more drafts of the Notice Memo. Nat'l Sec. Div., Nov 5, 2015 FOIA Response to ACLU (Nov. 5, 2015) (Treasury Department located 33-page draft DOJ memorandum related to FISA notice obligations and addressed to "All Federal Prosecutors") (attached as Cagle Decl., Ex. 2).

### 3.   Defendants failed to demonstrate that disclosure would reveal confidential client information.

Nor has DOJ provided facts to demonstrate that disclosure would reveal confidential client information. The privilege extends to communications from attorney to client only if that communication is "based on and would tend to reveal the client's confidential communications." *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). The government bears the burden of (1) establishing that the client communicated a confidential fact and (2) explaining how disclosure would reveal any such fact. *Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 71 (1st Cir. 2002). The "confidential information [must] *concern[] the Agency* [client]," and not some third party. *Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983) (emphasis in original).

DOJ has "failed to establish the requisite elements of a client-communicated fact" and failed "to explain how the withheld legal analysis would reveal any such fact if it existed." *Maine*, 298 F.3d at 71. Its declaration states only that the memoranda are "based in part on confidential information provided by the DOJ attorneys who sought the creation of the memoranda" and were sought "by the Government's decision-makers and their representatives through confidential, internal discussion." Kim Decl. ¶ 12. This "offers nothing more than conclusory assertions and blanket affirmations." *Cuban v. SEC*, 744 F. Supp. 2d 60, 79 (D.D.C. 2010); *NRDC v. Dep't of Defense*, 388 F.Supp.2d 1086, 1104 (C.D. Cal. 2005) (rejecting attorney-client privilege where declaration contained only conclusory legal assertions).

Nor has DOJ provided sufficient facts from which the Court could make "a finding that the documents are not based on facts acquired from other persons or sources." *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) (district court erred in finding attorney-client privilege where it did not make and record did not support predicate factual findings). A number of Executive Branch agencies, including the NSA and CIA, conduct FISA surveillance or use the fruits of that surveillance in carrying out their activities. *See, e.g.*, [*Redacted*], 2011 WL 10945618 (FISA Ct. Oct. 3, 2011); Savage, *Debate Brews*; (attached as Diakun Decl., Ex. 11); Nat'l Sec. Div., Nov 5, 2015 FOIA Response to ACLU (attached as Cagle Decl., Ex. 2). While DOJ attorneys may have directly "provided" the information, (Kim Decl. ¶ 12), the underlying source of any factual information about FISA surveillance and its role in investigations may have

derived from these outside agencies, rather than the purported client, DOJ. *Mead*, 566 F.2d at 254 n. 27 (privilege not established where "reasonable to infer that at least part of the factual predicate for the opinion" involved third party); *Schlefer*, 702 F.2d at 245 (privilege not established where agency client "transmits the relevant facts" from "outsider[]").

### 4. Defendant has not established that the memos involve legal rather than policy advice.

As Plaintiffs previously observed, the factual context, including DOJ's representation to a court that a prior version of these documents contained "policy advice," demonstrates that the authors of these documents were acting in a policy rather than legal capacity. But even setting aside that prior representation, DOJ has failed to meet its burden on this issue. Although DOJ's declaration offers the conclusory legal assertion that the memoranda "contain legal advice," it also acknowledges that they set forth "the authoring attorneys' views on … how the Government should comply with FISA's notice provision, along with related strategic considerations." Kim Decl. ¶ 12. Here, FISA on its face broadly requires the government to provide notice of affected individuals "[w]henever [it] intends to enter into evidence *or otherwise use* or disclose [FISA-derived information] … in *any … proceeding*." 50 U.S.C. § 1806(c) (emphasis added). There is no controlling Supreme Court opinion interpreting the scope of this notice obligation. Indeed, for many years, DOJ applied "a narrow understanding of what 'derived from' means" to avoid giving notice.[10] Guidance on "how the Government should comply with [this] notice provision, along with related strategic considerations" (Kim Decl. ¶ 12) raise, in significant part, the *policy* question of whether the government should construe its notice obligations broadly or narrowly. *See* Charlie Savage, Power Wars 586–93 (2015) (describing policy debate among DOJ, FBI, NSA, and other officials over when to provide notice) (attached as Cagle Decl., Ex. 3). In addition, DOJ acknowledges that the authors were "senior DOJ attorneys." Kim Decl. ¶ 6. There are senior DOJ attorneys whose role is to "serve as the primary policy advisor to the Attorney General."[11] Particularly given the subject matter of these memoranda, and the seniority of their authors, DOJ's conclusory assertion that they contained legal advice is insufficient to meet its

---

[10] *See* Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. TIMES (Oct 16, 2013) (attached as Diakun Decl., Ex. 17).
[11] *See* Office of Legal Policy, "Mission," https://www.justice.gov/olp (attached as Cagle Decl., Ex. 4).

burden of demonstrating that the authors were acting in a legal rather than policy capacity. "The attorney-client privilege should be narrowly construed especially where important constitutional interests and a public entity which is accountable to the citizenry are involved. Thus, the burden to prove that primary purpose was legal … advice is on the [government agency]." *See North Pacifica LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1128 (N.D. Cal. 2003)).[12]

### C. The Memoranda Contain DOJ's Effective Law and Policy.
#### 1. The memoranda are quintessential "working law."

DOJ's characterization of the working law doctrine is unduly narrow and incorrect for three related reasons. First, DOJ ignores that these memoranda have the central attributes of "authoritative" working law; second, DOJ mischaracterizes "working law" as something only courts can create, which, if correct, would eliminate the doctrine altogether; and finally, DOJ overlooks the fact that working law can be authoritative even if it serves as a "starting point" for government attorneys applying that law in individual cases.

First, the Notice and Cover Memos are DOJ's authoritative working law because they are final memoranda that possess the vital attributes of agency "law and policy." DOJ produced them following a recognition by top government officials that DOJ's narrow and undisclosed interpretation of its statutory notice obligations "could not be justified legally."[13] A senior DOJ official promised Congress and the public that DOJ would explain its policy shift to federal prosecutors across the country. Pl. Br. 11. Senior officials within DOJ then authored these memoranda and distributed them to subordinates—"all federal prosecutors"—for the purpose of ensuring nationwide compliance with notice obligations. Kim Decl. ¶ 4; *see Coastal States*, 617 F.2d at 859, 867–70 (memoranda authored by regional counsel responsible for interpreting pertinent regulations); *Jordan v. DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978) (guidelines were "directed at [author's] subordinates"); *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997)

---

[12] Defendants urge a broad view of "legal advice," but *United States v. Bauer*, 132 F.3d 504 (9th Cir. 1997), and *United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996), involve the distinguishable context of private attorneys advising private litigants. No "public entity…accountable to the citizenry [was] involved." *North Pacifica*, 274 F. Supp.2d at 1128. In *Families for Freedom v. CBP*, 837 F. Supp. 2d 287 (S.D.N.Y 2011), the issue of whether the documents involved legal advice was not contested or decided.

[13] *See* Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. TIMES (Oct. 16, 2013), https://nyti.ms/2tZDU3H (attached as Diakun Decl., Ex. 17).

(memos circulated from Chief Counsel to field offices had purpose of creating "coherent, consistent interpretations of . . . laws nationwide"). Notably, DOJ's declaration does not claim that federal prosecutors are free to disregard the interpretation of DOJ's statutory duties that is set forth in the memoranda. These memoranda function as DOJ's internal law and policy on matters of notice under FISA and Title III; if, somehow, they do not, then the earlier assurances of senior DOJ officials that the agency would promulgate new guidance ring hollow.

Second, DOJ claims that these memoranda cannot be authoritative for purposes of working law because the issues they concern "will ultimately be decided by the Court." Gov't Reply 12-13 (internal quotation marks, citations omitted). But that is wrong both legally and factually. While courts surely have the final word on legal disputes brought before them, *see Marbury v. Madison,* 1 Cranch 137, 178 (1803), FOIA was enacted precisely because agencies regularly make and apply their own "effective law and policy," much of which remains hidden from both the public and the courts. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975). That is why FOIA affirmatively requires disclosure of agencies' working law and adopted policies. *See* 5 U.S.C. § 552(a); *Assembly of State of Cal. v. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) ("working law" doctrine "insures that the agency does not operate on the basis of 'secret law'"). Accordingly, courts evaluate whether a document functions as an agency's internal law or policy irrespective of whether a court might at some point examine those agency interpretations. *See Coastal States*, 617 F.2d at 860 (legal memoranda were working law because auditors relying on them were effectively bound by their interpretation of the law). Moreover, as a factual matter, courts are highly unlikely to rule on the scope of DOJ's notice obligations, precisely because the secrecy of this surveillance leaves individuals unable to raise informed challenges in the first place. *See* Section II-A-1, *supra*.[14]

---

[14] Cases cited by DOJ are distinguishable because they addressed issues far more likely to be the subject of court adjudication—either in the context of surveillance applications or suppression motions. *See ACLU v. DOJ*, 70 F. Supp. 3d 1018, 1028 (N.D. Cal. 2014) (DOJ policies on type of court authorization required to obtain location tracking orders); *ACLU v. DOJ*, No. 12 Civ. 7412(WHP), 2014 WL 956303, at *7 (S.D.N.Y. 2014) (memos describing arguments prosecutors should make in light of recent Supreme Court decision when defendants challenged evidence obtained with GPS tracking). The same cannot be said here—where the legal interpretations in the memoranda bear directly on whether defendants will be told about surveillance. No court

1      Third, the government erroneously argues that these memoranda are not working law

2 because they do not "provide comprehensive guidance," are simply a "starting point" for

3 government attorneys, and have "no legal effect." Gov't Reply 13; Kim Decl. ¶ 7. But a

4 document need not determine every question in every case to be authoritative or controlling. *See*

5 Pl. Br. 11. The working law analysis is not concerned with whether a document provides

6 comprehensive guidance, but whether it contains an "established policy on which the agency

7 relies in discharging its [legal] responsibilities" on the issues it does address. *Coastal States*, 617

8 F.2d at 870. Government prosecutors rely on these memoranda in determining whether notice is

9 required in individual cases. Kim. Decl. ¶¶ 5-7. The fact that these memoranda serve as the

10 common starting point for a broad swath of cases (*id.* ¶¶ 6-7) only underscores their authoritative

11 nature. Finally, DOJ is wrong to claim that the memoranda have "no legal effect." They have

12 already had obvious legal effect: the policies they contain have required DOJ to provide notice of

13 surveillance in cases where it was systematically depriving individuals of notice before. *See, e.g.*,

14 Govt. Filing in *Hasbajrami v. United States* (attached as Diakun Decl., Ex. 19).

        **2.**      **DOJ has adopted the policy contained in these memoranda.**

15      DOJ's public statements—together with the Cover Memo, which describes the Notice

16 Memo and instructs prosecutors around the country how to use it—establish that these

17 memoranda have been adopted by DOJ. Pl. Br. 12–14. To avoid this conclusion, DOJ seeks to

18 limit the "adoption" doctrine to one narrow scenario: where officials have made the most specific

19 public pronouncements embracing a document. Gov't Reply 14-15. But neither FOIA nor the

20 Supreme Court regard adoption so dimly. FOIA itself contemplates scenarios where an agency

21 has internally "adopted" a policy or legal interpretation—and it affirmatively requires public

22 disclosure. 5 U.S.C. § 552(a)(1)(D) & (2)(B) (requiring disclosure of "statements of policy and

23 interpretations which have been adopted by the agency"). The Supreme Court has done the same.

24 *Sears*, 421 U.S. at 161.[15] The disclosure of internally adopted policies is a crucial element of

25

26 reviews or approves DOJ's decision to withhold notice, and the affected individuals have no

27 knowledge of that decision either, leaving them ill-equipped to challenge DOJ's legal interpretation in court.

28 [15] It would be a mistake—and a misreading of *Sears*—to regard adoption as turning solely on public statements, as the government claims. Gov't Reply 14-15. *Sears* did not involve any

FOIA's drive to eliminate secret agency law, because almost by definition the public is unaware of the law agencies apply in secret. When officials go out and *publicly* point to a policy to defend their actions that is simply good evidence of what has occurred behind closed doors. *See Brennan Ctr. v. DOJ*, 697 F.3d 184, 204-05 (2d Cir. 2012). It is especially valuable evidence in FOIA cases, where the government holds all the information, *cf. Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991), and plaintiffs are often denied any opportunity for discovery.

Here, there is evidence of both internal and public adoption. Not only does the Cover Memo show that the Notice Memo has been formally adopted by DOJ, Pl. Br. 13–14, but DOJ officials repeatedly invoked the policy change described in these memoranda to publicly defend their actions before Congress and the courts, *id.* at 13 n.23. In order to forestall criticism that DOJ had misled the Supreme Court, officials testified to Congress that DOJ had carefully reviewed its prior notice policy, had made a new "determination" about when its statutory duty applied, and pledged to convey a uniform policy to line prosecutors nationwide.[16] DOJ emphasizes that these public statements predate the issuance of these memoranda, (Gov't Reply 14), but DOJ again omits and ignores crucial factual context. DOJ originally drafted the Notice Memo as early as 2013, at the same time it began implementing its new notice policy and months *before* officials publicly touted that change in testimony to Congress. The fact that officials did not actually go about issuing a final version until later is not a defense. What matters is that the Notice Memo contains the policy change that officials publicly described when pressed to defend the agency's actions. *See N.Y. Times Co. v. DOJ*, 138 F. Supp. 3d 462, 474 (S.D.N.Y. 2015).

### 3. Documents that embody an agency's effective law and policy may not be withheld under the attorney-client or work-product privileges.

Because the memoranda constitute DOJ's effective law and policy, they must be disclosed even if one of the Exemption 5 privileges applies. The D.C. Circuit has expressly held that the working law doctrine overcomes the attorney-client privilege. *Tax Analysts*, 117 F.3d at

---

public reliance, yet the Supreme Court found that the agency had internally adopted certain documents by incorporating them into Appeals and Advice memoranda that represented the agency's "final opinion." 421 U.S. at 161.

[16] *Hearing*, supra note 3 (attached as Diakun Decl., Ex. 21); Additional Prehearing Questions for John Carlin Upon His Nomination to be Assistant Attorney General for National Security Department of Justice, 1, 9-10 (attached as Cagle Decl., Ex. 5).

619 ("Exemption 5 and the attorney-client privilege may not be used to protect . . . agency law from disclosure to the public."). And although the D.C. Circuit has held, without significant analysis, that the working law doctrine does not overcome the work product privilege, *see id.* at 620, the Ninth Circuit has not addressed the issue.[17] This Court should conclude that it does. *See N.Y. Times Co.*, 138 F. Supp. at 474-75 (adoption doctrine overcomes assertions of both work-product privilege and attorney-client privilege).

FOIA's core statutory purpose is to prevent agencies from developing and applying a body of secret law. The Act does this by "requir[ing] the disclosure of documents which have 'the force and effect of law.'" *Sears*, 421 U.S. at 153. This concern about secret law is particularly acute for interpretations of statutes or regulations that are authoritative and will not be developed further in the "the course of litigation" or in front of regulatory bodies or the courts. *Id.* at 160. When an agency relies on an overarching policy or legal interpretation in carrying out its public duties, it may not shield that law and policy behind a cloak of privilege. For this reason, *Sears* required the disclosure of final opinions directing the dismissal of charges over an assertion of work product. *Id.* at 157-58. In the same way, the authoritative positions in these memoranda are unlikely to see the light of day regardless of whether the government provides notice in an individual case. Because these memoranda are the Executive Branch's authoritative statement of the law, FOIA and the principles underlying *Sears* requires their disclosure over an assertion of work product or attorney-client privilege.

Defendant relies on a footnote of dicta from *Federal Open Market Committee of the Federal Reserve System v. Merrill*, 443 U.S. 340 (1979). But the Court in *Merrill* considered the narrow question of whether Exemption 5 incorporated a qualified privilege for confidential commercial information that would allow the government to delay the release of records set for eventual publication in the Federal Register. *Id.* at 349, 360; *see* 5 U.S.C. § 552(a)(1)(D). The government did not assert the work product privilege and there was thus no occasion to consider it. *Id.* at 353. Indeed, both the *Merrill* footnote and DOJ ignore the fact that in *Sears* the Court

---

[17] The subset of documents withheld as privileged in *Tax Analysts* were far more case-specific than the general policy memoranda at issue here. *See* 117 F.3d at 609 (documents created in response to requests for "legal guidance, usually with reference to the situation of a specific taxpayer").

ordered the disclosure of working law over a claim of work-product privilege. *Sears*, 421 U.S. at 157-58. Finally, unlike *Merrill* where the documents were slated for eventual publication, the memoranda here will continue to operate as secret law unless disclosed through FOIA.

### D.   The Court Should Order Disclosure Or Conduct An *In Camera* Review.

Where, as here, the agency has failed to meet its burden, it is appropriate for the Court to order disclosure. *See, e.g., Feshbach v. SEC*, 5 F. Supp. 2d 774, 788 (N.D. Cal. 1997). In the alternative, the Court should review the two documents *in camera. See* Pl. Br. 25.

DOJ's suggestion that it should instead be given the chance to file a further declaration cannot be justified. DOJ pointedly declined to provide such a declaration with its reply, and further delay would prejudice Plaintiffs. *See* H.R. Rep. No. 93-876 (1974) (delay in complying with FOIA requests may be "tantamount to denial"), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6271; *cf. also Maine*, 298 F.3d at 72-73 (rejecting agency's contention that district court should have granted it "opportunity to submit additional affidavits" instead of ordering disclosure). If, however, the Court orders DOJ to submit a further declaration, it should direct DOJ to specifically, and fully, address the following factual issues:

Regarding claims of privilege: (1) the identity of DOJ's client; (2) the identity of all individuals and agencies to whom the memoranda were circulated; (3) the factual basis for any purported common interest; (4) the factual information conveyed by the client and its underlying source; (5) how disclosure would tend to reveal this information; (6) non-conclusory information regarding the memoranda's discussion of policy, as opposed to legal, advice.

Regarding use of these memoranda as DOJ's effective law and policy: (1) any and all instructions, in the documents or otherwise, about how line prosecutors are to use them; (2) whether line prosecutors are permitted to disregard the legal interpretations the memoranda contain, and in what circumstances; (3) whether the memoranda contain, in whole or in part, any objective, neutral discussion of the government's notice obligations; and (4) whether the memoranda have been distributed to other agencies, such as the Treasury Department, which use FISA or Title III information in other types of activities or proceedings.

The Court should deny Defendants' and grant Plaintiffs' motion.

1

Respectfully submitted,

2

3

Dated: November 3, 2017

By: _____ /s/ *Linda Lye* _____

4

Linda Lye
Matthew Cagle
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437

5

6

7

8

9

Patrick Toomey (admitted *pro hac vice*)
Anna Diakun (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2654

10

11

12

13

14

*Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28