1

2

3

4
UNITED STATES DISTRICT COURT

5
NORTHERN DISTRICT OF CALIFORNIA

6

7
AMERICAN CIVIL LIBERTIES UNION
OF NORTHERN CALIFORNIA, et al.,

8
Plaintiffs,

9
v.

10

11
DEPARTMENT OF JUSTICE,

Defendant.

12

Case No.  17-cv-03571-JSW

**ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 25, 26

13

14
    Now before the Court for consideration are the motion for summary judgment filed by the

15
Department of Justice ("DOJ" or "Defendant") and the cross-motion for summary judgment filed

16
by the American Civil Liberties Union of Northern California ("ACLU of Nor. Cal."), the

17
American Civil Liberties Union ("ACLU"), and the American Civil Liberties Union Foundation

18
("ACLU Foundation") (collectively "Plaintiffs").  The Court has considered the parties' papers,

19
including their supplemental briefs, relevant legal authority, the record in this case, and it

20
conducted an *in camera* review of the documents at issue.  For the reasons set forth in this Order,

21
the Court GRANTS Defendant's motion and DENIES Plaintiffs' cross-motion.

**BACKGROUND**

22
    This is a dispute under the Freedom of Information Act ("FOIA"), 5 U.S.C. section 552, in

23
which Plaintiffs ask for information about the federal government's policy on providing notice to

24
individuals subject to surveillance under either Title III of the Omnibus Crime Control and Safe

25
Streets Act of 1968, 18 U.S.C. sections 2510 *et seq.* ("Title III") or the Foreign Intelligence

26
Surveillance Act, 50 U.S.C. sections 1801 *et seq.*  ("FISA").[1]  Under Title III and FISA, the

27

28
————————————

[1]    This is not the first case in which the ACLU and the ACLU Foundation have attempted to

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    government may use evidence obtained or "derived from" electronic surveillance in legal

2    proceedings if certain conditions are met.  Among those conditions is a requirement that the

3    government provide notice of the surveillance to certain persons.  *See* 18 U.S.C. § 2518(9); 50

4    U.S.C. § 1806(c).

5         On February 6, 2017, Plaintiffs submitted a request to Defendant under FOIA seeking

6    disclosure of the following information: (1) a memorandum titled "Determining Whether

7    Evidence Is 'Derived From' Surveillance Under Title III or FISA"; (2) any cover letter or other

8    document attached to this memorandum; (3) any version of this memorandum created or

9    distributed on or after November 23, 2016, whether considered "final" or otherwise; and (4) any

10   record modifying, supplementing, superseding, or rescinding this memorandum or its contents.

11   (Compl. ¶¶ 2, 26; Declaration of Anna Diakun ("Diakun Decl."), ¶ 4, Ex. 1.)

12        In response, Defendant identified two documents, which are the only two documents at

13   issue in this case.  Defendant has withheld these two documents on the basis that they are exempt

14   from disclosure because they are attorney work-product and because they are protected by the

15   attorney-client privilege.[2]  To prove the documents are not subject to disclosure, Defendant

16   presents a declaration from Susan L. Kim, an Attorney Advisor in the FOIA and Declassification

17   Unit at the Office of Law and Policy in the National Security Division ("NSD") of the DOJ.  (Dkt.

18   No. 25-1, Declaration of Susan L. Kim ("Kim Decl."), ¶ 1.)

19        The first document at issue is a two-page memorandum, dated November 23, 2016, from

20   Patty Merkamp Stemler, Chief of the Appellate Section of the DOJ's Criminal Division, and

21   Steven M. Dunne, Chief of the NSD's Appellate Unit, to "all federal prosecutors," with a subject

22   line of "Determining Whether Evidence is 'Derived From' Surveillance Under Title III or FISA."

23

24   obtain materials regarding this subject, and it is not the first case in which Defendant has invoked
     the exemption at issue here.  *See, e.g. American Civil Liberties Union v. United States Department*

25   *of Justice*, 252 F. Supp. 3d 217 (S.D.N.Y. 2017) ("*ACLU II*"); *American Civil Liberties Union v.*
     *United States Department of Justice*, 210 F. Supp. 3d 467 (S.D.N.Y. 2016) ("*ACLU I*").

26   [2]    When Defendant denied Plaintiffs' FOIA request, it also asserted that the Cover Memo

27   was exempt from disclosure under 5 U.S.C. sections 552(b)(6) and 552(b)(7)(C).  Defendant no
     longer invokes those exemptions.  (Kim Decl., ¶ 3 n.3.)  Plaintiffs no longer challenge the

28   adequacy of Defendant's search for responsive records.  (Joint Case Management Statement, ¶
     15.)

1   (*Id.*,

2   ¶ 4.)  The Court shall refer to this document as the "Cover Memo."  Ms. Kim attests that the Cover

3   Memo is marked "privileged and confidential" and that "[i]n a series of paragraphs[,]" it

4   "summarizes the subject, content, and purpose of" the second document at issue in this case.  (*Id.*)

5   Ms. Kim also attests the Cover Memo "comments more broadly on DOJ efforts to ensure legal

6   compliance in the matters discussed."  (*Id.*)

7           The second document at issue is a 32-page memorandum, including the title page, entitled

8   "Determining Whether Evidence is 'Derived From' Surveillance under Title III or FISA" and is

9   dated "November 2016."  (*Id.* ¶ 5.)  The Court shall refer to this document as the "FISA Memo."

10  Ms. Kim attests that each page of the FISA Memo is marked "Attorney Work Product" and "For

11  Official Use Only."  (*Id.*)

12          According to Ms. Kim, the FISA Memo

13                  consists of four sections – an introduction summarizing the purpose
            of the memorandum, a table of contents, a summary of conclusions,
14          and a section of legal analysis.  The legal analysis section constitutes
            the vast majority of the document, and is divided into a number of
15          subsections based on the particular legal issue under discussion.
            Altogether, the FISA Memo consists primarily of legal analysis of
16          [Title III]; [FISA]; and relevant case law, with a focus on the present
            state of the law on when evidence is "derived from" electronic
17          surveillance under Title III and FISA such that notice must be
            provided to appropriate parties.  Discussions of various strategic
18          considerations – largely what steps [DOJ] attorneys should take to
            ensure they are complying with the relevant law during litigation
19          and what legal arguments and litigation approaches have the greatest
            chance of success in light of the law in this area – are interwoven
20          throughout this legal analysis.

21  (*Id.*)

22          Ms. Kim attests that both the Cover Memo and the FISA Memo "were written and

23  reviewed by groups of senior DOJ attorneys at the request of senior DOJ officials seeking both

24  legal guidance for themselves regarding the Government's Title III and FISA notice obligations,

25  and a way to assist DOJ attorneys confronting these issues preparing for or during litigation."  (*Id.*,

26  ¶ 6.)  Ms. Kim also attests these memoranda "do not provide authoritative instructions for DOJ

27  decision-makers or litigating attorneys, with the [Cover Memo] specifically noting that the

28  memoranda were not intended to provide comprehensive guidance regarding the matters

United States District Court
Northern District of California

United States District Court
Northern District of California

1    discussed, but only an overview of relevant legal and strategic considerations for attorneys' use."

2    (*Id.*)  Ms. Kim attests the Cover Memo states "that the documents are to be used as a starting point

3    for determining whether evidence is 'derived from' surveillance, to be supplemented as

4    appropriate by an attorney's own updated legal research and consultation with knowledgeable

5    DOJ attorneys."  (*Id.*)  She also attests the FISA Memo states that "it is simply setting forth the

6    basic law and legal frameworks at issue, that such law remains the ultimate standard, and that

7    courts could conceivably disagree with its conclusions in some contexts."  (*Id.*)

8          On March 20, 2019, the Court ordered Defendant to file the documents under seal and on

9    an *ex parte* basis so that the Court could review the documents *in camera*.[3]  The Court has done

10    so, and it will address additional facts as necessary in its analysis.

## ANALYSIS

**A.     Legal Standards Applicable to Motions for Summary Judgment.**

13          "A party may move for summary judgment, identifying each claim or defense … on which

14    summary judgment is sought."  Fed. R. Civ. P. 56(a).  A principal purpose of the summary

15    judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v.*

16    *Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment, or partial summary judgment, is

17    proper "if the movant shows that there is no genuine dispute as to any material fact and the movant

18    is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In considering a motion for

19    summary judgment, the court may not weigh the evidence or make credibility determinations, and

20    is required to draw all inferences in a light most favorable to the non-moving party."  *Freeman v.*

21    *Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514

22    F.3d 878, 884-85 (9th Cir. 2008).

23          The party moving for summary judgment bears the initial burden of identifying those

24    portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue

25    of material fact.  *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c).  Where, as here, a court

---

[3]     The documents are located at Docket 46 and, pursuant to an Order issued on April 1, 2019, they shall be maintained in hard copy only.

United States District Court
Northern District of California

considers cross-motions for summary judgment, a court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nevada v. City of Las Vegas*, 330 F.3d 1092, 1097 (9th Cir. 2003). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248.

If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the non-moving party must "'identify with reasonable particularity the evidence that precludes summary judgment.'" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.      FOIA and Exemption 5.**

Plaintiffs seek disclosure of the FISA Memo and the Cover Memo under FOIA, which "was enacted 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *ACLU of Nor. Cal. v. U.S. Dep't of Justice,* 880 F.3d 473, 482 (9th Cir. 2018) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) ("*Rose*")); *see also Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 741 (9th Cir. 1980). FOIA requires public disclosure of internal government records, and "[w]hen a request is made, an agency may withhold a document, or portions thereof, only if the material at issue falls within one of the nine statutory exemptions found in § 552(b)." *ACLU of Nor. Cal.*, 880 F.3d at 483. Because "disclosure, not secrecy, is the dominant objective of the Act," the exemptions must be construed narrowly. *Rose*, 425 U.S. at 361. *See also ACLU of Nor. Cal.*, 880 F.3d at 483.

Exemption 5 is at issue in this case. That exemption precludes disclosure of "inter-agency

1    or intra-agency memorandums or letters that would not be available by law to a party other than an

2    agency in litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  This exemption covers attorney

3    work-product and the attorney-client privilege.  *See, e.g. NLRB v. Sears, Roebuck & Co.*, 421 U.S.

4    132, 148-49 (1975); *ACLU of Nor. Cal.*, 880 F.3d at 483.

5         Defendant bears the burden to show Exemption 5 applies to the Cover Memo and the FISA

6    Memo.  *ACLU of Nor. Cal.*, 880 F.3d at 483; 5 U.S.C. § 552(a)(4)(B).  In order to meet its burden,

7    Defendant "must offer oral testimony or affidavits that are 'detailed enough for the [Court] to

8    make a *de novo* assessment of the … claim of exemption."  *Maricopa Audubon Soc. v. U.S. Forest*

9    *Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (quoting *Doyle v. FBI*, 722 F.2d 554, 555-56 (9th Cir.

10    1983)).  Where an "agency relies on affidavits, they must contain 'reasonably detailed descriptions

11    of the documents and allege facts sufficient to establish an exemption.'"  *Id.* (quoting *Lewis v. IRS*,

12    823 F.2d 375, 378 (9th Cir. 1987)).  In FOIA cases, affidavits submitted by an agency to

13    demonstrate a document falls within an exemption are entitled to a presumption of good faith.

14    *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 773-74 (9th Cir. 2015).  *See also ACLU II,* 252 F.

15    Supp. 3d at 223.

16    **C.    The Working Law Doctrine and the "Specific Claim" Argument.**

17         "The work-product doctrine protects from discovery documents and tangible things

18    prepared by a party or his representative in anticipation of litigation."  *United States v. Richey*, 632

19    F.3d 559, 567 (9th Cir. 2011) (internal quotations and citation omitted).  Plaintiffs argue that even

20    if the documents are attorney work-product, the Cover Memo and the FISA Memo should be

21    disclosed because they constitute Defendant's "working law."  Plaintiffs also argue that the

22    documents cannot be protected as attorney work-product because they were not prepared in

23    anticipation of specific litigation.  The Court finds these arguments are foreclosed by the Ninth

24    Circuit's decision in *ACLU of Nor. Cal.*

25         In that case, the court noted that although the Supreme Court has recognized a "working

26    law" exception in the context of the deliberative process privilege, "the premises underlying the

27    working law exception have no application in the attorney work-product context."  880 F.3d at

28    489.  The court also found the specific claim "argument unpersuasive as a broad, inflexible

United States District Court
Northern District of California

6

proposition[.]" *Id.* at 486. Instead, the court concluded the argument had "some force as one factor in assessing whether a particular document is work product" subject to Exemption 5. *Id.* The court acknowledged that "not every document prepared by a DOJ attorney can be withheld on the basis that the agency may some day become involved in related litigation." *Id.* The court also recognized that "agency attorneys anticipating potentially recurring legal issues must be free to 'work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). *Cf. ACLU I,* 210 F. Supp. 3d at 482 (declining to "read a 'specific case' requirement in Second Circuit case law," which looks to whether "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation") (internal quotations and citation omitted).

The Court DENIES Plaintiffs' cross-motion for summary judgment to the extent it rests on these arguments.

**D.      The Court Concludes the Memos Are Covered by Exemption 5.**

To establish that the Cover Memo and FISA Memo are attorney work-product, Defendant must show they were: (1) "prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *Id.* (internal quotations and citation omitted). A document may serve "dual purposes." In such cases, the Ninth Circuit applies the "'because of' test." *ACLU of Nor. Cal.,* 880 F.3d at 485 (quoting *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004)). Under that test, a document "should be deemed prepared in anticipation of litigation and eligible for work product protection … if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 907 (internal quotations and citations omitted). When a court applies this test, it must "consider the totality of the circumstances and determine whether the document was created because of anticipated litigation and would not have been created in substantially similar form but for the prospect of litigation." *Id.* at 908 (internal citations and quotations omitted).

In *ACLU of Nor. Cal.*, the Ninth Circuit considered whether Exemption 5 applied to the

United States District Court
Northern District of California

1    "USABook," an internal resource manual relating to the DOJ's "use of electronic surveillance and

2    tracking devices in criminal investigations."  880 F.3d at 479.  At issue on appeal were two

3    sections of the book that the defendant asserted were attorney work-product: (1) a Tracking

4    Devices Manual; and (2) a chapter of a Narcotics Manual on electronic surveillance.  *Id.* at 482.

5    The court conducted an *in camera* review of the documents and stated that they contained "three

6    distinct types of information: (1) technical information about electronic surveillance technologies;

7    (2) considerations related to seeking court authorization for obtaining location information, and (3)

8    legal background and arguments related to motions to suppress location information in later

9    criminal prosecutions."  *Id.* at 485.[4]  The court's analysis on the latter two categories is most

10   relevant to this case.

11       The court noted that portions of the USABook discussing "ex parte applications for

12   judicial approval of the use of particular surveillance techniques and methods" was divided into

13   two types of materials: instructions and guidance about the type of court authorization that could

14   be pursued; and legal arguments to support the authorization.  The court determined that the first

15   type of information could have a non-adversarial purpose.  *Id.*  Because the document served "dual

16   purposes," the court applied the "because of" test to determine if it was work product and

17   determined that this portion of the USABook did not pass that test.  It reasoned the section would

18   have been created because of the need to instruct government attorneys "about how to conduct

19   criminal investigations regardless of whether those investigations lead to later prosecutions" and

20   because those portions did not serve any cognizable adversarial function.  *Id.* at 486.

21       In contrast, the court concluded that the second type of information presented the

22   "agency's positions on the type of authorization necessary to obtain electronic information …

23   [and] reflect the legal theories of the DOJ's attorneys.  They are included in the USABook to

24   assist prosecutors faced with defending in court the government's position on the authorization

25   necessary to obtain certain types of evidence."  *Id.*  Therefore, the court determined that "the

26

27   [4]      The court held that the first category of information did not qualify as work-product,
     reasoning that the function of that portion of the USABook was to provide investigators and
28   prosecutors with information about technologies relevant to conducting an investigation.  It did
     not contain "mental impressions, conclusions, opinions, or legal theories[.]"  880 F.3d at 485.

United States District Court
Northern District of California

1    sections of the USABook that detail DOJ's developed legal arguments regarding the process of

2    obtaining court authorization for certain forms of location data fall within Exemption 5." *Id.* at

3    486-88.  *Cf. Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice*, 844 F.3d 246, 251-52

4    (D.C. Cir. 2016) (concluding that DOJ's Discovery Blue Book was properly withheld under

5    Exemption 5 "because it provided practical, 'how-to advice' regarding discovery during

6    litigation") ("*NACDL*").

7         Finally, with respect to the third category, material regarding suppression motions, the

8    court determined that sections that listed "relevant case law and recite[d] case holdings … more

9    closely resemble[d]" CLE resources than attorney work-product.  *ACLU of Nor. Cal.*, 880 F.3d at

10   488.  However, it determined that sections containing "legal analyses and specific arguments,"

11   which could be used in response to suppression motions, would qualify as work-product.  In sum,

12   the court held that "[u]nless a given portion of the document … contains some original analysis,

13   … it cannot claim the protection of Exemption 5." *Id.* at 488.  The court then remanded the case

14   to the district court to conduct a segregability analysis.  It noted that, in general, when an entire

15   document is considered work product, "the government need not segregate and disclose its factual

16   contents." *Id.*  Because only portions of the documents were considered work-product, the court

17   ruled that "the non-exempt parts may be appropriately segregated and disclosed." *Id.* (citing

18   *NACDL*, 844 F.3d at 257).  *Cf. NACDL*, 844 F.3d at 257 (remanding to consider whether there

19   were "logically divisible sections" of non-exempt material).

20        In addition to the portions of the USABook that were at issue before the Ninth Circuit, the

21   district court had ruled that three memoranda, identified as CRM One, CRM Two, and CRM

22   Three (the "CRM memos"), were attorney work-product.  *ACLU of Nor. Cal. v. U.S. Dep't of*

23   *Justice*, 70 F. Supp. 3d 1018, 1033-34 (N.D. Cal. 2014).  The defendant, in its *Vaughn* index,

24   stated that these memoranda were "intended to outline possible arguments or litigation risks that

25   prosecutors could encounter" in light of, *inter alia*, the United States Supreme Court's decision in

26   *United States v. Jones*, __ U.S. __, 132 S.Ct. 945 (2012).  70 F. Supp. 3d at 1034.  The defendant

27   also stated that the memoranda "assess[ed] the strengths and weaknesses of alternative litigating

28   positions and offer[ed] prosecutors guidance, recommendations and best practices going forward."

9

*Id.* The court reasoned that there was no indication that the "memoranda were intended to function as an agency manual, or that they offer neutral analysis of the law." *Id.* Instead, the record suggested they appeared to be "more pointed" documents prepared to assist AUSA's with recurring litigation issues and to "convey litigation strategy, rather than convey routine agency policy." *Id.* Accordingly, the court found they were entitled to work product protection. *Id.*[5]

The Court's *in camera* review of the documents confirm that the Kim Declaration accurately describes the Cover Memo and the FISA Memo and their contents. It is clear that they were not created in connection with a specific case. Although that is a factor for the Court to consider, the Court finds it is not dispositive in this case. Much like the Discovery Blue Book, the FISA Memo and the Cover Memo are "entirely about the conduct of litigation." *NACDL,* 844 F.3d at 254. In this case, that would be litigation over the issue of when evidence could be considered "derived from" electronic surveillance. The Court concludes Defendant has demonstrated that disclosure would "risk revealing [Defendant's] litigating strategies and legal theories regardless of whether [the memos were] prepared with a specific claim in mind." *Id.*

The Court also concludes that even if the Cover Memo and the FISA Memo could serve dual purposes, such as on-going education or training, they would not have been created in substantially similar form but for the prospect of litigation. Unlike some of the documents described in the Ninth Circuit's opinion in *ACLU of Nor. Cal.*, they do not simply provide instructions to prosecutors or investigators. Instead, they are more like the documents that the Ninth Circuit court described as attorney work-product, *i.e.* documents presenting "legal arguments supporting the agency's positions" on the topics covered in the memoranda. *See ACLU of Nor. Cal.*, 880 F.3d at 485-86, 488. *Cf. NACDL*, 844 F.3d at 255 (finding that "any educational or training function the Blue Book might serve would not negate the document's adversarial use" and concluding it was prepared "because of" the prospect of litigation). The Court also concludes that the nature of the content of the FISA Memo and the Cover Memo also suggests they are more like the memoranda that the district court in *ACLU of Nor. Cal.* determined were work-product.

---

[5] That ruling was not at issue before the Ninth Circuit.

1    *See*, 70 F. Supp. 3d at 1033-34.

2         The Court notes that the FISA Memo does contain descriptions of cases that, "if

3    considered in strict isolation," have an air of neutrality. *NACDL,* 844 F.3d at 256.  However, as

4    that court noted "disclosure of the publicly-available information a lawyer has decided to include

5    in a litigation guide … would tend to reveal the lawyer's thoughts about which authorities are

6    important and for which purposes." *Id.*  Looking at the FISA Memo in its entirety, rather than in

7    isolation, the Court again finds it to contain the type of legal analyses the Ninth Circuit determined

8    were protected in *ACLU of Nor. Cal.*, 880 F.3d at 488, and that the district court found work-

9    product, 70 F. Supp. 3d at 1033-34.  The contents of the FISA Memo appear analogous to the

10   descriptions of the Discovery BlueBook that "offer[ed] compilations of cases that prosecutors can

11   use to support different arguments in litigation." *NACDL*, 844 F.3d at 256.  In this case, those

12   arguments would relate to whether evidence is derived from electronic surveillance.

13        Although the Court concludes that the FISA Memo and the Cover Memo are entirely

14   work-product, in light of the Ninth Circuit's opinion in *ACLU of Nor. Cal.*, it has conducted a

15   segregability analysis.  The Cover Memo and the FISA Memo are significantly shorter than the

16   Discovery BlueBook and are shorter the portions of the USABook that were withheld in *ACLU of*

17   *Nor. Cal.*  As the *NACDL* court noted, "[i]n cases involving voluminous or lengthy-work product

18   records … we think it is generally preferable for courts to make at least a preliminary assessment

19   of the feasibility of segregating nonexempt material."  844 F.3d at 257.  *See also ACLU of Nor.*

20   *Cal.*, 880 F.3d at 488-89.

21        Ms. Kim attests that the NSD "conducted a line-by-line analysis of both" the FISA Memo

22   and the Cover Memo and "did not identify any reasonably segregable information in these

23   documents."  (Kim Decl., ¶ 13.)  Her declaration is entitled to a presumption of good faith.

24   *Hamdan*, 797 F.3d at 773-74.  Having reviewed the documents *in camera,* the Court also

25   concludes that there are no logically divisible sections.  *See also ACLU II*, 252 F. Supp. 3d at 227

26   (finding documents were not reasonably segregable when disclosure would compromise

27   confidentiality of exempt information).

28        Accordingly, the Court concludes the Cover Memo and the FISA Memo are attorney

United States District Court
Northern District of California

11

work-product and are subject to Exemption 5.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment, and it DENIES Plaintiffs' cross-motion.  The Court will enter a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: April 15, 2019

_____
JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California